JOHN D. BRADFORD AND BENJAMIN M. BRADFORD, APPELLANTS,
   *v.* THE PRESIDENT, DIRECTORS, AND COMPANY OF THE UNION
   BANK OF TENNESSEE.

Where there was a contract for the sale of land for the purchase of which indorsed
   notes were given, but before the time arrived for the making of a deed, the pur-
   chaser failed, and the liability to pay the note became fixed upon the indorser; and
   a new contract was made between the vendor and the indorser, that, in order to
   protect the indorser, he should be substituted in place of the original purchaser,
   fresh notes being given and the time of payment extended, evidence was admissible
   to show that the latter contract was a substitute for the former.

A part of the land having been sold for taxes whilst the first set of notes was running
   to maturity, (the vendee having been put into possession,) and the vendor being
   ignorant of that fact when the contract of substitution was made, all that the
   indorser can claim of the vendor, is a deed for the land subject to the incumbrances
   arising from the tax-sales. The notes given for the substituted contract must be
   paid.

The indorser having filed a bill for a specific performance upon the title-bond, which
   he had received from the vendor, this Court will not content itself with dismissing
   his bill without prejudice, and thus give rise to further litigation, but proceed to
   pass a final decree, founded on the above principles.

THIS was an appeal from the District Court of the United
States for the Northern District of Mississippi, sitting as a court
of equity.

The facts are sufficiently stated in the opinion of the court.

It was argued by *Mr. Volney E. Howard*, for the appellants,
and by *Mr. Carlisle* and *Mr. Coxe*, for the appellees.

The counsel for the appellees made the following points,
namely: —

1. The defence could not have been made at law in this case,
because a court of law has no power to rescind a contract for
part failure of consideration, especially on the ground that the
inducement to the whole purchase had been defeated by such
part failure of title.    Greenleaf *v.* Cook, 2 Wheat. 13; 2 Kent,
476; Parham *v.* Randolph, 4 How. Miss. Rep. 435.

2. Although judgment had been obtained at law, the com-
plainant had a right to a good and valid title when he paid the
money, and to ask the aid of a court of chancery for that pur-
pose, especially against a foreign corporation seeking to enforce
the judgment, after a tender of the money, demand, and refusal
of title.    The bill should not, therefore, have been dismissed.
He was not compelled to take part of the estate, if a main in-
ducement to the purchase had failed.    2 Story, Eq. § 778.

3. The bank does not even tender a deed or title for that por-
tion of the land of which they are seized, or a quitclaim for that
which was sold for taxes. It does not admit of doubt, that the
court erred in not decreeing some sort of conveyance by the

bank, on the payment of the purchase-money. Bradford could not be put in a worse position than Brown, if he ought to suffer for Brown's neglect in not paying the taxes.

4. Whether the title-bond to Bradford is to be viewed as a distinct independent contract, or a mere novation of that of 1841, the court cannot look beyond the bond for its terms, nor vary them by parol. It is a covenant, that the bank was seized of the legal title in 1845, and would make a good and valid title when the notes were paid by Bradford. It was the consideration of the new notes, and the substitution of John D. and B. M. Bradford for the former and Brown. It was a contract of the bank's own election, and by which it obtained a new and additional security. 1 Greenl. § 276 – 277.

It is not competent to show a consideration essentially different from that recited in the deed. Greenl. § 26; 4 Greenl. Cruise, 254, note 1; Id. p. 24, note; 4 Cow. 431.

Parol additions to a deed are rejected. 1 Sugd. 179, (153.)

5. The tax-sales appear to have been regular, and in conformity to the laws of Mississippi; and, if so, vested in the purchasers the title to one half the land. By the laws of that State, the assessment is a lien upon the land. Hutch. Code, p. 176 – 177.

The defendants admit they cannot make a good title to one section, if the tax-title is valid. The vendee cannot be compelled to take a title thus incumbered as a good and valid title. It is selling him a lawsuit with an adverse possession.

Equity has jurisdiction to decree specific performance of a bond to convey lands, 4 Pick. 1; Mills *v.* Metcalf, 1 A. K. Marsh. 477. and the prayer may be for specific performance or recession. Id. Woodstock *v.* Bennett, 1 Cow. 711; vide also Stevenson *v.* Maxwell, 2 Comst. 408. As to part performance and damages, and decree against parties residing out of the State. Sutphen *v.* Fowler, 9 Paige, 280; 11 Id. 277.

The vendee ought not to be compelled to take a title with such a cloud over it; neither should he be left to a suit on his bond against a corporation resident in another State. 7 Blackf. 31; 5 Mon. 189. It is a clear case for equitable relief, either by a total recession of the contract, or specific performance with damages. Certainly, the court should have decreed a conveyance upon the payment of the money.

*Mr. Coxe*, for the appellees. The questions arising upon the record present no great difficulty. It is a case of clear and undisguised fraud on the part of complainants. The court below ordered the bill to be dismissed, and such it is confidently believed will be the result in this court.

The first question which arises was presented in the court below on the demurrer, and is again set up in the answer. It is that, if the allegations of complainants be true, as made in the bill, the facts, as averred, would have constituted a perfect defence in the action at law in which the judgment was obtained, which the bill seeks to enjoin; and that complainants, who were defendants in that action, having omitted to take such defence at law, or, if they did, having failed to sustain it, equity will not now interpose in their behalf.

In cases of fraud it is perfectly well settled, that the jurisdiction of the courts of law and of equity is concurrent. It becomes exclusive only when the case is brought before the one or the other. Gregg *v.* Lessee of Sayre et al. 8 Pet. 244; Lessee of Swayze *v.* Burke, 12 Pet. 11; Russell *v.* Clark's Executors, 7 Cranch, 69; Lessee of Rhoades *v.* Selin, 4 Wash. C. C. R. 715; 9 Wheat. 403, 532.

In the present case the fraud which is in proof, is one committed by complainants, none such as is alleged being sustained even by a shadow of proof against defendants. If fraud, a good defence at law. Gilpin *v.* Smith, 11 Sm. & Marsh. 129; and cases cited.

In the bill claiming relief, complainants aver that an actual sale and purchase of certain real estate were made, and that at the time this contract was concluded, the property which he purchased was in part held in possession under an adverse claim with color of title, and has ever since been thus held, so that the purchaser has never been able to obtain possession or enjoy the benefit of his purchase. If this allegation is true, Bradford had a complete defence at law in the action upon his bonds, for such an adversary holding places him in precisely the same predicament as if he had gone into possession under his purchase and then been ousted by a paramount title. In Duvall *v.* Craig, 2 Wheat. 46, 61, it was held by this court, that if a grantee be unable to obtain possession, in consequence of an existing possession or seizin by a person claiming and holding under an older title, this would be equivalent to an eviction. The local law is in accordance. Dennis *v.* Heath, 11 Sm. & Marsh. 206.

Again, he alleges that the bank cannot make him a good title to the property for which he contracted. Admitting that, under the circumstances, this would furnish a valid defence, yet it was equally available at law; 7 Sm. & Marsh. 340. Had he tendered the purchase-money, and demanded such deed as he claims under the bond, and it was then made to appear that the bank was unable to make a good title, his defence at law would have been complete; Liddell *v.* Sims, 9 Sm. & Marsh. 596. Nor was it necessary for him to have proceeded thus far, for the sim-

ple fact that the bank did not demand payment and tender a deed, would have furnished a complete defence. Washington v. Hill, 10 Smedes & Marsh. 560.

Having thus, upon the facts which the bill alleges, a full, complete, and adequate remedy at law, and having omitted or neglected to avail himself at law of the defence to which those facts, if proved, would have entitled him, he is without remedy in equity; Graves v. Boston, &c. Ins. Co. 2 Cranch, 419; 2 Story, Eq. sect. 179 and 887; 1 John. C. R. 49–465; 6 How. (Mis.) 569; 5 Id. 80; 7 Id. 172; 3 Sm. & M. 453; 4 Id. 358; 8 Id. 131; 9 Id. 98; 10 Id. 112; and clearly in Truly v. Wanzer, 5 How. s. c. 141; Id. 192; Creath v. Sims, 9 Wheat. 552; Marine Ins. Co. v. Hodgson, 7 Cranch, 332.

If we examine the merits of the case, as disclosed in the pleadings and evidence, the entire want of even a semblance of equity will be obvious. The evidence shows, beyond all possibility of doubt, that, in October, 1841, the bank sold the lands in question to Brown, gave him a title-bond, conditioned to make to him a good title upon the payment of the purchase-money, and received from him an obligation to pay this purchase-money as therein specified. In this obligation complainant, John D. Bradford, joined as surety. Payment not being made as stipulated, the bank brought suit on the paper against Bradford, recovered judgment against him, and either, as the answer alleges, issued execution, or, as the bill avers, threatened so to do.

There is no allegation, proof, or pretence, that, in October, 1841, when this purchase and sale were consummated, the title of the bank to the entire property which it contracted to sell was not absolute and perfect; that the contract of sale was not perfectly honorable, just, and lawful; that the consideration-money was not reasonable and proper. Up to this period no allegation or imputation of impropriety, or unfairness, or want of capacity to carry out the contract, is alleged.

Under the circumstances which have thus been stated, Benjamin M. Bradford made, on behalf of his brother, an application to the bank, in September, 1844, in the form of a letter, addressed to George W. Foster. In this letter it is stated that John M. Bradford had been prevailed upon to become security for Brown; that Brown held the title-bond, and if the purchase-money is paid the land must be conveyed to him, and become liable to old judgments, which will absorb it and leave his brother remediless. It is then proposed that Brown shall surrender his title-bond, and that a new one shall be given to Bradford, who, on his part, will then give security for the payment of the purchase-money on an extended credit.

That this letter was written by John M. Bradford, or by his

authority, and with his knowledge, is clearly shown in the record. In his letter of 2d December, 1844, to G. W. Foster, he says : " My friend, J. L. Brown, informs me that the Union Bank has acceded to our proposition made through you," &c. No other proposition appears to have been made in the letter of the brother, for both Foster and Bass say, the proposal contained in this letter was that which we submitted to the bank, and on which alone it acted. It may also be inferred from the testimony of Gholson, and his letter of March 20, 1848, that the Bradfords, when they made their proposition to the bank, knew of the tax-sale made in 1843, and then entertained the design now attempted to be accomplished, of using that sale as a means of defeating the bank in the recovery of the debt.

The complainants' bill exhibits a strong case of the *suppressio veri*, for no allusion, however distant, is made to the position occupied by the parties at the date of the letter, in September, 1844. It certainly cannot be doubted that, had the entire case been presented to the court, no injunction would have been awarded.

The ground assumed, that it was incumbent on the bank to pay the taxes assessed upon the lands subsequent to the contract of purchase and sale with Brown, has no foundation in principle or in authority. From the instant the contract for the purchase and sale of real estate is consummated, the party who has bought and obligated himself to pay the price stipulated, is the owner. Even if an absolute conveyance has been made the vendor retains a lien for the purchase-money, and this tacit mortgage may be enforced in equity. If, however, the vendor retains the legal title, which has become the modern practice, and which closes the door against any attempt to perpetrate fraud upon third parties, the case is not essentially changed ; the vendor retains the position of a mortgagee. Such is the settled law in Mississippi. 4 Sm. & M. 300 ; 6 Id. 149 ; 10 Id. 184.

If the lands in this predicament should be sold for taxes, the vendor may be deprived of that security for the payment of the purchase-money, but it by no means follows that the debt is extinguished. In truth, he may continue that security by paying these taxes ; in which case he is entitled, as against his vendee, to add the amount thus paid to the original debt, and enforce reimbursement of the aggregate sum. This is, however, optional with him, and not obligatory.

Mr. Justice NELSON delivered the opinion of the court.

This is an appeal from the District Court of the United States for the Northern District of Mississippi.

The complainants in the court below, the appellants here, filed their bill for the specific performance of an agreement with the defendants for the conveyance of two sections of land in the Chickasaw cession.

The land was to be conveyed for the consideration of the sum of $3,741, payable in instalments, the last payment to be made on the 12th of October, 1847, at which time the deed was to be delivered.

The bill states that at the time of the purchase, the defendants had no title to the land, as both sections with the exception of the quarter of one of them, had been previously sold for taxes, and the time for redemption expired. That since then the defendants have redeemed one of the sections; but it is alleged that the purchase of the two sections was one entire contract, and that the main inducement was to obtain a title to the whole tract, and that the purchase would not have been made of either section separately on account of the situation, and state of the improvements. That it was the duty of the defendants to have paid the taxes, and to have prevented the sale therefor.

The bill further states that a judgment had been recorded against the complainants for the amount of the purchase-money; and that the defendants were endeavoring to enforce the collection on execution. That they have tendered the amount of the judgment and interest, and have demanded a deed conveying a good and sufficient title to the land, which demand has been refused. That they are still willing to pay the judgment with interest and costs, and tendered the same in court, and to accept a complete title from the defendants if they can make one.

The bill prays for an injunction enjoining the defendants from collecting the judgment, that they be compelled to exhibit their title, and to execute the contract specifically, and to account for the rents and profits. And that, if the defendants are unable to execute the contract specifically and entire, it may be delivered up and cancelled, and the injunction made perpetual.

The defendants, in their answer, admit the execution of the contract for the conveyance of the two sections as stated in the bill; but deny that the transaction was intended as a purchase of the land; on the contrary, they insist, it was intended as a substitution of John D. Bradford, one of the complainants, to the rights of one John L. Brown, who had previously purchased the same, and to whom the defendants had agreed to convey the title.

The defendants allege that they entered into a contract with Brown for the sale of the land on the 20th of October, 1841, that he executed to them his four several notes for the purchase-money, payable in one, two, three, and four years, which notes

were indorsed by John D. Bradford, one of the complainants, as surety, and that the contract was conditioned to make to Brown a good and valid title on the payment of the purchase-money.

That default was made in the payment, and a judgment recovered against Bradford as indorser, an execution issued, and about to be levied upon his property. And that thereupon an application was made to them on behalf of Bradford, for an arrangement by which he might have the benefit of the purchase of Brown, as he was insolvent and there were old judgments standing against him, which would bind the land if the title was made to him. That in consequence of these representations they assented to the arrangement, simply on the ground of favor and indulgence to Bradford, not being disposed to coerce the payment of the money from a surety, and at the same time withhold from him the means of indemnifying himself.

And that, at the suggestion on behalf of Bradford, and as the simplest mode of effecting the object of the arrangement, they took up the title-bond previously given to Brown, and gave a new one to him, agreeing, at the same time, to a request for further indulgence in the payment of the purchase-money by extending it for the period of one, two, and three years. That it was under these circumstances, the contract in question was entered into by the defendants, on the 9th of January, 1845, to convey the title to the two sections to Bradford instead of to Brown, the original purchaser.

The defendants admit they have been informed, and believe that both sections, with the exception stated, have been sold for taxes, prior to the date of this last arrangement; but aver that they had no knowledge of the fact at the time. They admit that they had not paid any taxes accruing after the purchase by Brown, 12th October, 1841, nor had they paid any attention to the same, as they considered it the duty of Brown.

They admit that they have redeemed one of the sections, and would have redeemed the greater part of the other, had it not been for the interference of the complainants to prevent the purchaser from assenting to it.

They also admit that they cannot make an unincumbered title to the east half and south-west quarter of section No. 12, if the tax-sale is a valid one; but if the same is not, they can make a good valid title to the whole of both sections.

These are the material allegations as set forth in the pleadings. The proofs in the record sustain substantially the view of the case as stated in the answer.

The original purchase of the two sections by Brown from the defendants, of the 12th of October, 1841, extended the payment

of the purchase-money, running through a period of four years; and although it contains no provision for possession in the mean time, it is conceded that the vendee was entitled to it, and that actual possession was taken accordingly.

Indeed, the courts of Mississippi regard the vendor in contracts of this description as standing, in most respects, upon the footing of one who has already conveyed the title, and taken back a mortgage as security for the purchase-money; and the vendee as mortgagor in possession. 4 Sm. & Marsh. 300; 6 Id. 149; 10 Id. 184.

Brown, therefore, during the running of the contract, was at least the owner of the equitable title, accompanied with the possession; and as such was under obligation to take care of and pay the taxes assessed, accruing after his purchase. And the loss of the title to the whole or any portion of the tract in consequence of neglect, in this respect, is attributable to his own fault, for which the defendants are not responsible. No doubt, with a view to the better security of the purchase-money, they might have paid the taxes in case of the neglect of the vendee, and charged the amount to him. But this was a question they had a right to determine for themselves, and with which Brown had no concern.

It is quite clear, therefore, if the case stood on the original contract of purchase, the defendants, on the tender of the purchase-money, would have been bound only to convey to the vendee a good and valid title to the land at the time, subject to any outstanding title or titles that existed under tax-sales, where the payment of the taxes had accrued subsequent to the purchase. For these titles they would not have been responsible, as they arose from the neglect of Brown.

The question in the case is, whether or not the complainants stand in any different, or better situation.

John D. Bradford, one of them, was surety for Brown for the purchase-money, and against whom a judgment had been recovered for the amount, execution issued, and about to be enforced, and, for aught that appears in the record, he was abundantly able to meet the demand. If payment had been enforced he would have been left to look to Brown, the principal, for indemnity, who, it is admitted, was insolvent. In this state of the proceedings, he applied to the defendants through his brother, the other complainant, for relief: first, to obtain from them the interest in the land which Brown was entitled to, he consenting that it might be thus transferred; and second, for further indulgence in the time of payment of the money; the brother offering to join in the security. To induce the defendants to make this change, it was urged that, if the deed was made to

Brown, judgments against him would bind the land, and Bradford be deprived of the means of security for his advance, and that he was sure, from his knowledge of the defendants, it was not their intention to distress him for an act of friendship to Brown, although he had made himself liable for the debt: that for this purpose he wished, with the concurrence of Brown, the title-bond to be changed by the defendants from Brown to him; that this could work no detriment to them, and would afford him security for his liability; and also that the payment might be extended to one, two, and three years.

The defendants consented, and the arrangement was made accordingly, the new bond for the title corresponding with the old one, except in the change of the name of Bradford for Brown and the times of payment. The new bond thus given, 9th of January, 1845, on its face, bound them to make a valid title to the two sections on the 9th of January, 1848, when the last payment became due.

Under these circumstances, it is contended that the defendants are under obligation to made a deed to Bradford, conveying a complete title to the two sections, on his tender of the purchase-money, or, in default thereof, that the agreement between them should be cancelled, on the ground: 1st. That it is not competent for the court, upon settled principles of law, to admit parol evidence to alter or vary the terms or legal effect of the written agreement; and, 2d. Even if it is, that the new bond for the title is distinct from, and independent of, the one given to Brown, and hence the conveyance to Bradford is not subject to the qualifications as to the title to which the conveyance to Brown might have been on account of the outstanding tax-titles from his own neglect.

It is by no means clear, that Bradford is not chargeable with notice of the condition of the title, at the time he made application to the defendants to have the bond changed from Brown to himself. These two sections seem to have been his only means of indemnity as surety, which circumstance would naturally have led him to have made an examination into it; and, especially, as his liability had passed into a judgment, and which was about to be enforced against him. It is fair, also, to presume that he would make the inquiry, with a view to the condition and value of the property in connection with his application to obtain the change of the bond, and get the title to himself. Besides, it is inferable from the evidence in the record, that he resided at the time in the same county in which the lands lie, and was in a situation to obtain readily the necessary information. And, assuming this conclusion to be well founded, the concealment of the facts from the defendants at the time,

would be a fraud upon them, which at once removes all difficulty in respect to the admissibility of the evidence as to the true character of the transaction.

But we do not propose to put the case upon this ground; as we are satisfied, independently of this view, the evidence is admissible and proper to show the understanding and real intent of the parties, although different from that which the written contract imports on its face.

"One of the most common classes of cases," says Judge Story, in his Commentaries on Equity Jurisprudence, "in which relief is sought in equity on account of a mistake of facts, is that of written agreements, either executory or executed. Sometimes by mistake the written agreement contains less than the parties intended; sometimes it contains more; and sometimes it simply varies from their intent by expressing something different in substance from the truth of that intent. In all such cases, if the mistake is clearly made out by proofs entirely satisfactory, equity will reform the contract, so as to make it conformable to the precise intent of the parties." 1 Story's Eq. Jurisprudence, p. 164. And Lord Hardwicke remarked in Henkle *v.* Royal Exchange Assur. Co., 1 Ves. Sen. 317, "No doubt but this court has jurisdiction to relieve in respect of a plain mistake in contracts in writing, as well as against frauds in contracts; so that if reduced into writing contrary to the intent of the parties, on proper proof that would be rectified."

And this ground, it is agreed, is available to a defendant by way of defence in the answer to a bill for a specific performance; as he may thus insist upon any matter which shows it to be inequitable to grant the relief prayed for. The court will not interpose to compel a specific execution, when it would be against conscience and justice to do so. 1 Story's Eq. Juris., 174; 2 Id. 80.

These principles have become elementary, and it is needless to refer to further authorities to sustain them.

Now, we are perfectly satisfied, upon the proofs before us, that it was the agreement and understanding of both parties in this case, that Bradford should be substituted in the place of Brown in the title-bond, and should take such interest as he had in the two sections in question under it, and nothing more; and this, that he might become entitled to the deed, when the purchase-money was paid, which otherwise must have been made to Brown; in other words, an agreement to put the surety in the place of the principal for the sake of indemnity, as it was seen that he would be obliged to advance the money. For this purpose, the defendants were appealed to on the ground that there were judgments against Brown which would bind the land

if the deed was made to him, and it was suggested that the simplest way to effect the object would be to take up the old, and give a new title-bond to Bradford.   The suggestion was readily acquiesced in by the defendants, as a mode of making the change that would enable him to obtain the benefit of the security desired, Brown first consenting to it.   But the suggestion was acquiesced in, and the new bond given for the title, in ignorance of the fact that portions of the land had been previously sold for taxes through the neglect of Brown, and the titles outstanding.   This fact, as is apparent, affected most materially the character of the transaction, as the mode in making the substitution has had the effect of imposing upon the defendants responsibilities they were not under to Brown ; namely, to make good the title to the two sections, notwithstanding it had been lost by his neglect.

Now this they were not asked by Bradford to do, nor was such the agreement or understanding of either of the parties ; but directly the contrary.   The agreement was for a substitution of Bradford in the place of Brown, in the previous sale.

The form of the bond for the title, therefore, given to Bradford, and thus inadvertently adopted, and which imposes upon the defendants this new obligation, grew out of a mistake, and misapprehension of the facts as to the condition of the title at the time.   Had the condition of the title been known, it is obvious the new bond would not have been given, or, if given, its terms would have been qualified according to the true meaning of the parties.

In its present form it does not at all carry out their understanding and agreement in making the arrangement desired, but defeats them ; for in consequence of this misapprehension as to the state of the title, it is not a substitution of interest of Brown, but in effect a resale to Bradford, by which he is entitled not to such a deed as the defendants were under obligation to make to Brown, but to one investing him with a complete title to the land.

And as they are disabled from making this title by reason of the tax-sales, if it is not competent for the court to correct the mistake and reform the contract, according to the real understanding of the parties, the result is, they have lost their land, and Bradford, the surety for the purchase-money, is discharged from his liability — a result any thing but within the contemplation of the parties at the time of the arrangement.

We admit, if the defendants had agreed to resell this land to Bradford, and to give him a title, the fact that they were ignorant of the tax-sales would have afforded no ground of defence to a specific execution.   The title-bond in that case would have

stood on the footing both parties intended, namely, that a good title should be given when the purchase-money was paid.

But here there was no agreement to sell on the one side or to buy on the other. The agreement was to give Bradford the benefit of the sale already made, and to make him such a title as the defendants were under obligation to make to Brown. It was in truth but an assent on their part to an agreement on the part of Bradford with Brown that he should be substituted in his place in that sale — a sort of subrogation of the surety to the rights of the principal. The mode adopted to carry out the arrangement would have conformed to the intention of the parties had the facts been as the defendants had every reason to believe, namely, that no change had taken place in the condition of the title. The mistake as to this fact has given an effect to the instrument far beyond the agreement and real understanding of the parties, and which will operate most unjustly and inequitably, if permitted to stand.

The hardship of the case, as well as the unconscientious advantage sought to be obtained, will be more apparent, when we recur to the fact, that the defendants had no interest whatever in consenting to the change of the contract in favor of Bradford. Their debt was secure and in a situation to be immediately realized, as it was in judgment, and execution, and it is admitted he was able to meet it. They were actuated altogether from a disposition to assist him in obtaining some indemnity as surety for this debt, which it belonged to Brown to pay. And as it was a matter of indifference to them whether they made the deed to Brown or to him, they readily assented to the proposed arrangement. Indeed, it would have been hardly creditable, under the circumstances in which the application was made, to have refused it.

We are satisfied, therefore, that the case falls within the established principles of equity, in granting relief against contracts entered into upon a mistake, and misapprehension of the facts, and where the enforcement of which would enable one of the parties to obtain a most unconscientious advantage over the other.

The next question is as to the disposition to be made of the case.

The former course of proceeding in chancery, which was most usually adopted, would be to dismiss the bill without prejudice, and which in this case would lead us to affirm the decree of the court below. The effect of this would probably be to open up a new scene of litigation between the parties; as the complainant, John D. Bradford, could resort to his remedy at law upon the title-bond; and the defendants would be obliged to file a cross-bill for the purpose of staying his proceedings, and reforming

the contract so as to make it conform to the real understanding of the parties.

The more modern course of proceeding is to dispense with the cross-bill and make the same decree upon the answer to the original bill that would be made, if a cross-bill had been filed, if the defendant submits in his answer to a performance of the real agreement between the parties. The answer is viewed in the light of a cross-bill, and becomes the foundation for a proper decree by the court. This practice has been adopted as most convenient and expeditious in settling definitively the rights of the parties, and for the sake of saving further litigation and expense.

In the case of Staplyton *v.* Scott, 13 Ves. 425, the master of the rolls dismissed the cross-bill with costs, considering it unnecessary, as the court would upon the answer decree a specific execution of what was the real agreement.

This practice was followed by Lord Eldon in Fife *v.* Clayton, 13 Id. 546, on the ground that it was right in principle, and would save expense. A specific performance was also decreed upon the answer in Gwyn *v.* Lethbridge, 14 Ves. 585, and it appears now to be a very common practice in chancery proceedings. 1 Daniell, Pr. 436 and note; 2 Id. 101, 102 and note; Story's Eq. Pl. sect. 394.

These cases refer more particularly to the right of the defendant to have a decree for a specific execution of the agreement according to the answer so that he may be saved the expense of a cross-bill, even against the claim of the complainant to have his bill dismissed.

The same principle, however, seems to be equally applicable to the complainant where he insists upon the decree for specific performance of the contract as established by the proofs, although different from that set up in the bill. Indeed, we perceive no solid distinction between the two cases. In both, the contract, of course, when ascertained and conformed to the real understanding of the parties, must be such a one as the court deems fit and proper to be enforced. 2 Daniell, Pr. 1001, 1002; London & Birmingham Railway Co. *v.* Winters, Craig & Phil. 62.

We shall adopt this practice in the disposition of this case, as it will save all further litigation and expense, and settle the rights of the parties, as, in our judgment, the principles of equity and justice demand.

The bill was dismissed by the court below without prejudice, leaving the complainants at liberty to resort to any other remedy in the case which they might deem expedient.

We shall, therefore, reverse the decree, and remit the proceed-

ings to the court below, with directions that the defendants execute a deed of the two sections of land in question to John D. Bradford with covenant of warranty, subject however to any oustanding title or titles accruing from tax-sales since the sale, and title-bond to John L. Brown, 12th Oct., 1841, and deposit the same with the clerk of the court to be delivered to the said Bradford on his surrendering and cancelling the title-bond made to him on the 9th January, 1845, and paying the judgment the defendants have against the complainants for the purchase-money, with interest; also that the injunction be dissolved, and the defendants be at liberty to enforce the execution of the judgment; that no costs shall be allowed to the appellant in this court, and that costs shall be decreed to the defendants in the court below.

Mr. Justice DANIEL and Mr. Justice GRIER dissented.

## *Order.*

This cause came on to be heard on the transcript of the record from the District Court of the United States, for the Northern District of Mississippi, and was argued by counsel. On consideration whereof, it is now here ordered, adjudged, and decreed, by this court, that the decree of the said District Court in this cause, be, and the same is hereby reversed, and that this cause be, and the same is hereby remanded to the said District Court with directions, that a decree be entered that the defendants execute a deed of the two sections of land in question to John D. Bradford, with covenant of warranty, subject, however, to any outstanding title or titles accruing from tax-sales since the sale, and title-bond to John L. Brown of the 12th of October, 1841, and deposit the same with the clerk of the said District Court, to be delivered to the said Bradford on his surrendering and cancelling the title-bond made to him on the 9th of January, 1845, and upon his paying the judgment the defendants have against the complainants for the purchase-money with interest; also that the injunction be dissolved, and the defendants be at liberty to enforce the execution of their judgment.

And it is further ordered and decreed that each party pay his own costs in this court, and that costs shall be decreed to the defendants in the court below.