## JOHN T. STANLEY CO., Inc., v. LAGOMAR-SINO.

### No. 363.

Circuit Court of Appeals, Second Circuit.

May 4, 1931.

Hardy, Stancliffe & Hardy, of New York City (Noah A. Stancliffe and George T. Barker, both of New York City, of counsel), for appellant.

Fogarty, Quel & Devlin, of New York City (Seymour B. Quel, of New York City, of counsel), for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an appeal from an order granting a preliminary injunction, and the question is whether it was properly allowed on the record before the District Court.

The defendant was for a time engaged on his own account in collecting grease and fat from restaurants for sale to soap makers. His business was conducted in the states of New York and New Jersey under the name of Jersey Fat Corporation.

The complainant was a corporation engaged in buying fats, grease, bones, and similar materials suitable for the manufacture of soap and certain other by-products which it sometimes rendered into soap and at times sold. It had been in business many years, and had built up a large trade and good will.

The story as told in complainant's affidavits is that the defendant in August, 1926, sold his business good will and two trucks to one James Carty under a written agreement whereby defendant was to receive $10,000 therefor, and was not to engage in the same or a similar business within the states of New York or New Jersey, or to solicit customers in such a business on his own account, for a period of ten years, and was to work for Carty for that period at $50 per week. The written contract contained no promise by Carty to employ the defendant. It provided that the covenants should inure to the benefit of any assignee of Carty who transferred to the complainant all his rights under it.

The written agreement contained the following clause specially bearing upon the negative covenants on the part of the defendant not to engage in the business referred to:

"It is however understood and agreed that this agreement and the covenants herein contained shall in no wise be affected by reason of the fact that the undersigned shall be employed by the said James L. Carty, his legal representatives or assigns, it being intended that this agreement shall be in full force and effect in any event during the said

period and time and within said territory at any time after the undersigned shall leave the employ of the said James L. Carty, his legal representatives or assigns.

"The undersigned has agreed to be employed by the said James L. Carty and said employment shall in no wise affect the operation of this agreement."

The defendant was paid the $10,000 for his trucks and good will and worked for the complainant at wages of $50 per week until October 24, 1930, when the latter terminated the employment. The defendant then began to do business in New York and New Jersey on his own account and to solicit complainant's customers. Thereupon complainant filed its bill to enjoin defendant from doing business contrary to the terms of the agreement and obtained a preliminary injunction. It is from the decree granting such injunction that this appeal has been taken.

The written contract is part of the moving papers, and the only issue of fact raised by the defendant is that it did not represent the real agreement between the parties.

The defendant filed an affidavit in opposition to the motion for an injunction in which he said that the contract which he signed was prepared by a lawyer at the instance of one Harry Daiber, who was the general manager of the collection and rendering department of the complainant; that the latter told him that he would be employed by the complainant for ten years at a salary of $50 a week and that he did not need any lawyer or anybody else to attend with him at the time the contract was to be signed. The affidavit also stated that the defendant did not read English very well and did not read the contract at all; that Daiber had the papers in front of him and professed to read parts of them, or rather to paraphrase parts of them to him; that Daiber repeatedly assured defendant that by the papers he was selling the trucks and business to a person named Carty for the sum of $10,000, and that by the contract he was to be employed by the complainant for a period of ten years at a salary of $50 a week, and that for the next ten years he "was all fixed and would have nothing to worry about." The affidavit also said that upon the strength of this statement the defendant signed the papers presented to him by Daiber; that he asked the latter for a copy of the papers which he had signed, but was told that it was not the practice to allow copies of papers of that kind to leave the office, and that it was not necessary for him to have a copy of the papers because the arrangement was just as had been explained. The defendant swore that he never saw either the original papers which he had signed, or a copy, from the time of signing until November, 1930, when he was discharged, without any cause except that lower priced workmen could be obtained. No affidavit was filed by complainant denying the foregoing statements.

The affidavit of the defendant read upon the hearing for the preliminary injunction thus indicates (1) that he was an illiterate man who was misled by the complainant's agent as to the contents of the writing; and (2) that there was an oral agreement to employ him for ten years.

It may well be that the facts stated in defendant's affidavit will be disproved at the trial, but, inasmuch as they were not answered on the motion, the decree for the preliminary injunction should not have been granted.

If the uncontradicted story of the defendant was true, the negative covenants not to engage in business in competition with the complainant, or to solicit its customers, ought not to be enforced in equity where the complainant had broken its agreement to employ him for ten years. Whether or not defendant might still be bound at law to perform the negative covenants so that an action for a breach of his promise to observe them would lie, it would be unconscionable to grant a preliminary injunction restraining him from the breach, where such an important part of the consideration exchanged for his agreement to surrender his right to do business as the promise to employ him for ten years was not to be performed. Pope Mfg. Co. v. Gormully, 144 U. S. at page 237, 12 S. Ct. 632, 36 L. Ed. 414.

It may be argued that all oral agreements between the parties had become merged in the written instrument, so that proof of a promise to employ defendant for ten years could not be considered. But the defendant relied on fraud or mistake as a defense to what is in effect a suit by complainant to enforce specific performance of the written agreement. A defense that a writing does not represent the real agreement of the parties and has been executed through fraud or mistake can always be interposed in a suit in equity to enforce performance of the signed instrument, and a cross-bill to reform it is no longer necessary. Bradford v. Union Bank, 13 How. 57, 14 L. Ed. 49; Cathcart v. Robinson, 5 Pet. at page 276, 8 L. Ed. 120; Northern R. R. v. Ogdensburg, etc., R. Co.

(C. C.) 18 F. 815; Lockwood v. Cleaveland (C. C.) 6 F. 721; Daniell's Chancery (Sixth Ed.) 1531, 1532. On the face of the showing in defendant's affidavit the record may therefore be treated as though the agreement contained a promise to employ the defendant for ten years. Viewed as such, and prior to development of the facts at final hearing, an injunction pendente lite ought not to be allowed. Carpenter v. Southern Properties (Tex. Civ. App.) 299 S. W. 440; Fries v. Parr (Sup.) 139 N. Y. S. 220; Telegraph Despatch, etc., Co. v. McLean, L. R. 8 Ch. App. 658.

Decisions of the New York Court of Appeals and the Appellate Division are relied upon as showing that a preliminary injunction to enforce such negative covenants as are embraced in the written contract here ought to be granted irrespective of the manner of the termination of defendant's employment.

In McCall Co. v. Wright, 198 N. Y. 143, 91 N. E. 516, 519, 31 L. R. A. (N. S.) 249, the defendant voluntarily left the plaintiff's employ and surreptitiously engaged in a similar business with a rival concern in violation of the terms of his covenant. The only question discussed by the court was the lack of mutuality of obligation because of a provision in the contract giving the plaintiff a right to terminate the employment at any time on thirty days' notice. The Court of Appeals held that an injunction should be granted and that it was no excuse for denying it that the plaintiff had an option to terminate the employment. Hiscock, C. J., said: "One party has furnished a good consideration for which the other has agreed to refrain from doing certain things, and it is no excuse for a violation of the agreement while it lasts that the beneficiary may at some time terminate it."

The foregoing case seems to rest upon the fact that the employee abandoned his work for the plaintiff and entered into a competitive business while the latter was willing to continue the employment.

In Eastern, etc., Co. v. Abrahams, 173 App. Div. 788, 160 N. Y. S. 69, an employee had agreed that, for a period of eighteen months after the termination of his employment, he would not engage in a competitive business. The opinion states that he remained in plaintiff's employ about a year and a half, during which time he filled various positions. Thereupon his employment was terminated and shortly thereafter he entered upon a competitive business and solicited plaintiff's customers for a rival concern. While the defendant contended that he was wrongfully discharged, the facts set up in the moving and answering affidavits are not mentioned, and, so far as appears, there may have been adequate proof that the discharge was justifiable either in law or fact. The judge writing the opinion said that the question was one which must be determined at the trial, and the court doubtless allowed the injunction because it was satisfied that the plaintiff on its motion had sustained the necessary burden of proof.

In Amalgamated Industrial Corporation v. Teichholtz, 177 App. Div. 456, 164 N. Y. S. 289, a stockholder had sold all his stock in a corporation which amalgamated with others to form the plaintiff company in return for stock of the new corporation and for a contract of employment for ten years. The contract provided that he should not engage in a competitive business within a specified territory. His employment was terminated —whether by his act or that of his employer was a matter of dispute. The court held that under the terms of the agreement it was not material which was the case, and that an injunction should issue to restrain the violation of the negative covenants. This is the only case to which we are referred where any appellate court suggests that a negative covenant not to engage in a competitive business may be enforced by injunction irrespective of whether the plaintiff has broken its contract with the defendant or otherwise acted inequitably. It is not indicated in the opinion whether the termination of the defendant's employment was wrongful or not. If it was justifiable, there would, of course, be no defense to the enforcement of the negative covenants.

It seems clear from the above that in none of the three New York decisions relied on was an injunction to enforce negative covenants granted where the defendant's affidavits showed a wrongful discharge and his story was not disputed.

For the reason that the decision of the issues raised by the affidavits should await final hearing, the decree granting a preliminary injunction is reversed.