MORAN et. al. v. HAGERMAN et al.

(Circuit Court of Appeals, Ninth Circuit. October 23, 1894.)

No. 86.

**1. EQUITY PRACTICE—FINAL DECREE—AMENDMENT.**

M. Bros. owned 310 bonds of the O. & N. R. Co. out of an issue of 600, of which the remaining 290 were claimed to be invalid. The trustee of the mortgage securing the bonds brought suit to foreclose, and have the proceeds of sale of the road applied to such bonds as were valid, making the railroad company only a party. Pending the foreclosure suit, M. Bros. brought suit against the holders of the 290 bonds and the railroad company, praying that the holders of such bonds be decreed not to be entitled to share in the proceeds of the foreclosure sale. Holders of 147 of such bonds answered, alleging the validity of their bonds, and praying for a decree accordingly. A decree for foreclosure was entered in the first suit, the road was sold, and bought in by M. Bros., and a decree entered, adjudging M. Bros.' bonds entitled to be first paid out of the proceeds of sale, under which the whole proceeds of the sale were paid to M. Bros. No appeal was taken from such decree. In the second suit a decree was entered adjudging M. Bros.' bonds entitled to be first paid, from which an appeal was taken to the supreme court, which reversed such decree as to the holders of 31 of said 290 bonds, and held them entitled to share equally with M. Bros. Upon the mandate of the supreme court, which directed that such execution and further proceedings be had in the cause, in conformity to the decision of that court, as ought to be had, a decree was entered in the circuit court, adjudging only that the holders of such 31 bonds share upon terms of equality with M. Bros. At a subse-

quent term, upon petition of holders of such 31 bonds, an order was made, modifying the decree by directing a master to ascertain the amount due, out of the proceeds of the sale, on M. Bros.' bonds and on the 31 bonds, and upon the report of such master a final decree was made, awarding the holders of such 31 bonds their proportion of the proceeds of the sale, and decreeing that they recover the same of M. Bros. *Held*, that the decree first entered on the mandate of the supreme court was not final, and did not preclude the court from further action, even at a subsequent term, since such decree fell short of a fulfillment of the decision of the supreme court, whose mandate remained in force until its behests were complied with.

2. EQUITY PLEADING—ANSWER AND CROSS BILL—AFFIRMATIVE RELIEF.
    The objection that the affirmative relief prayed for in defendants' answers and awarded them by the final decree should have been sought by cross bill could be waived, and came too late after the entry of the decree of the supreme court adjudging defendants entitled to the relief sought, though it seems that such relief might have been awarded on the answers and the petition for amendment of the decree, regarded as a supplemental answer, the state of the facts at the time the answers were put in not having required such relief as is the function of a cross bill.

3. ESTOPPEL—REPRESENTATION OF BONDHOLDERS BY TRUSTEE.
    *Held*, further, that the holders of the 31 bonds were not estopped to enforce their decree in the second suit by the decree in the foreclosure suit, though not appealed from, since the trustee of the mortgage represented the holders of bonds only for the protection of their lien, within the scope of the powers conferred by the deed of trust, and not to deny their right.

4. MORTGAGE FORECLOSURE—PAYMENT BY SURRENDER OF BONDS.
    *Held*, further, that personal judgment against M. Bros. in favor of defendants was rightly rendered, though they had paid for the road by surrender of their bonds, and not in money; since such sale was regarded in law as made for money, and the court might have ordered that they pay into court the amount justly due defendants.

Appeal from the Circuit Court of the United States for the District of Nevada.

This was a suit by Charles Moran and others against J. C. Hagerman, administrator, and others. From a final decree in favor of defendants, complainants appeal.

Robert M. Clarke, for appellants.

W. E. F. Deal and Edmund Tauszky, for appellees.

Before McKENNA and GILBERT, Circuit Judges.

GILBERT, Circuit Judge. In the year 1881, Moran Bros., the appellants in this case, were the owners of 310 bonds of $1,000 each of the Oregon & Nevada Railroad Company, which bonds were secured by a mortgage deed of trust to the Union Trust Company of New York. The total issue of the bonds was 600, but the validity of the remaining 290 was denied by Moran Bros. In March, 1883, the trust company began a suit in the United States circuit court for Nevada to foreclose the deed of trust and sell the mortgaged property, and to have the proceeds of the sale applied to the 310 bonds held by Moran Bros., and such other bonds, if any, as had been legally issued. The trust company and the railroad company were the only parties to the suit. On April 14, 1883, and while that suit was pending, Moran Bros., as complainants, brought, in the same

court, a second suit, which is the suit now before this court on appeal, alleging in their bill that the 290 bonds above referred to were fraudulent, and praying for a decree that the holders thereof be not entitled to share in the proceeds of the foreclosure sale. To this suit the holders of the 290 bonds and the railroad company were made parties defendant. On May 19, 1883, the answer of certain of the holders of the 290 bonds was filed, denying the charge of fraud, and alleging that the bonds held by them—147 in all—were valid, and were acquired by them for a valuable consideration, and praying for a decree in accordance with such facts. The railroad company answered, admitting the allegations of the bill. On August 7, 1883, the circuit court made an interlocutory decree in the first suit, which may be called the "foreclosure suit," finding the averments of the bill to be true, and ordering a sale of the mortgaged property, and a return of the proceeds into court to await the order of distribution to be thereafter made. The property was sold on April 17, 1884, for $372,534.21, to Moran Bros., which sum was the amount due them upon their 310 bonds, together with the costs. After the entry of the order of sale in the foreclosure suit, testimony was taken in that suit upon the question of the validity of the 290 bonds, but the holders of those bonds were not present or notified of that proceeding. Testimony was also taken at about the same time in the present suit. On March 29, 1884, the circuit court rendered its decision in both suits, and on May 6th following entered a decree in the foreclosure suit adjudging that said 147 bonds were not entitled to participate in the proceeds of the sale of the property, except as to the surplus remaining after the payment of the 310 bonds of Moran Bros. No appeal was taken from that decree. On May 13, 1883, the circuit court made its decree in the second suit,—which is this suit,—to the same effect as in the foreclosure suit. On March 23, 1886, an appeal was taken to the supreme court from the decree of the circuit court in this cause, and on March 3, 1890, the supreme court reversed the decree of the circuit court as to the appellees herein, who are the holders of 31 of said 147 bonds, holding that they were entitled to share in the proceeds of the sale upon terms of equality with Moran Bros. McMurray v. Moran, 134 U. S. 150, 10 Sup. Ct. 427. The mandate of the supreme court was issued July 19, 1890, and was filed in the circuit court November 3, 1890. It directed that "such execution and further proceedings be had in said cause, in conformity to the decree and opinion of this court, as, according to right and justice and the laws of the United States, ought to be had." On February 2, 1891, the circuit court, for the purpose of carrying out said mandate, rendered a decree in this cause, adjudging that the appellees "share in the proceeds of the said sale in proportion to the amount of bonds held by them respectively, and upon terms of equality with the complainants." On October 24, 1891, Watkins, one of the appellees, filed a notice of a motion and petition for an order amending and modifying the decree of February 2, 1891, so that there be inserted therein an order directing the master to ascertain the amount due on the 341 bonds, and the amount of the proceeds of the foreclosure sale, and the costs of that suit and sale, and the proportion of the

proceeds properly applicable to the payment of Moran Bros.' 310 bonds and the 31 bonds owned by the appellees, and that upon ascertainment and determination of said matters the appellees have judgment and execution against Moran Bros. for their proportionate amount of said proceeds, "and for such other or further order in the premises as is consistent and in conformity with the opinion, decree, and mandate of the supreme court of the United States, in this cause." The notice stated that the motion would be made upon the ground that said matters were omitted from the decree by oversight, inadvertence, and mistake. It was stated in the petition that the proceeds of the sale after payment of the costs had been paid to Moran Bros. in the sum of $367,234.55. Objection was made by Moran Bros. to the motion and petition upon the ground, among other objections, that the term at which the decree of February 2, 1891, was entered, had expired before the motion and petition were filed, and that, therefore, the court had no jurisdiction or control of the decree, or power to modify the same. The court overruled the objections, and upon the 9th day of May, 1892, made an order granting the prayer of the petition, modifying the decree accordingly, and directing the master to ascertain and report to the court concerning the matters alleged in the petition. On September 6, 1892, a final decree[1] was made, affirming the report of the master, and awarding the appellees their proportion of said proceeds in the sum of $33,419.57, with interest from the date of the sale, amounting in the aggregate to $51,659.44, and decreeing that the appellees recover the same of and from Moran Bros. The appeal is taken from the final decree, and the only error assigned is that the circuit court had lost jurisdiction of the cause, and had no power to modify the decree of February 2, 1891, for the reason that the term of the court at which that decree was rendered had expired before application was made for its amendment.

Whether there was error in entering the order and decree subsequent to the decree of February 2, 1891, depends upon whether or not the decree of that date was final, and was such as to carry out in all respects the decree and mandate of the supreme court. The decision of the supreme court was that the appellees herein were entitled to their pro rata share of the proceeds of the sale, and the mandate required that such execution and proceedings be had in the circuit court as ought to be had in conformity with the decree and the opinion of the supreme court. In short, the mandate directed the circuit court to take such steps as should be necessary to place the appellees

---

[1] An appeal was taken from this decree to the supreme court, complainants in their assignment of errors alleging that the decree should have been in their favor, "for the reason that the term had elapsed at which said original decree was made, and the said circuit court had lost jurisdiction of said suit, and had no power or authority to modify or amend said original decree, or to make any order or decree in said suit in any manner affecting the rights of the parties herein." The supreme court dismissed the appeal because of the absence of a formal certificate of the "question of jurisdiction," which precluded any review of a cause directly appealed from the circuit court, under the fifth section of the act of March 3, 1891, on the ground that the jurisdiction of that court was in issue. 151 U. S. 329, 14 Sup. Ct. 354.

in possession of their just proportion of the proceeds of the mortgaged property. The decree of February 2, 1891, fell short of doing this. It was but a repetition of the terms of the mandate. It decreed that the appellees, together with Moran Bros., should have their 341 bonds paid pro rata out of the proceeds, but it contained no order of distribution; indeed, the proceeds were no longer in the possession of the court, and it contained no statement of the amount of the proceeds, or the amount due the appellees. It did not direct the payment by Moran Bros. to the appellees of any sum whatever. The mandate remained in force until its behests were complied with. A decree which fell short of a fulfillment of the decision of the supreme court, and failed to secure to the successful litigant the relief to which he was decreed to be entitled, was not a final decree, and did not preclude the court from further action, even at a subsequent term. The circuit court could not, by a partial compliance, lose the power to obey the mandate to its full extent. The suit had been begun by Moran Bros. for the purpose of obtaining a decree directing the payment of their bonds to the exclusion of the bonds held by the bondholders whom they brought into court as defendants. The latter denied that the bonds of Moran Bros. were entitled to such preference, and they alleged the validity of their own bonds, and prayed that they be decreed to participate in the proceeds, and for general relief. Upon these issues the cause was tried. It was held by the supreme court that the appellees herein were entitled to the relief they prayed for. It was the duty of the circuit court to obey the mandate, and furnish that relief. The decree of February 2, 1891, failed to secure it. Under that decree the appellees could recover only their costs in the appeal. They could not obtain the money which the supreme court had said was theirs. It was still necessary for the circuit court to ascertain the amount of the proceeds, to whom they had been paid, the amount thereof justly due the appellees, and by whom that amount should be paid them, and to order the payment accordingly. To do this the cause was referred to a master. His function was not ministerial, as in the case of a decree requiring him to sell property and distribute the proceeds according to the order of the court, but it was judicial, since he must necessarily ascertain and determine the amount of money each bondholder should have, and the sum that should be paid by the one to the other. A decree that left this undone was not a final decree. Green v. Fisk, 103 U. S. 518; Craighead v. Wilson, 18 How. 199; Railroad Co. v. Swasey, 23 Wall. 405; Iron Co. v. Martin, 132 U. S. 91, 10 Sup. Ct. 32; McGourkey v. Railway Co., 146 U. S. 544, 13 Sup. Ct. 170. We find no error, therefore, in the action of the court in amending the first decree.

The appellants were allowed, under the permission of the court, to make other assignments of error, one of which is that the appellees are not entitled to the relief afforded by the amended decree, for the reason that such relief is not within the issues made in the pleadings, since the appellees were content to answer the bill, denying the complainants' equities, and filed no cross bill asking for affirmative relief. The answer, as we have already seen, declared affirma-

tively the validity of the defendant's bonds, and prayed for the same relief that would have been sought by a cross bill. At that time the mortgaged property had not been sold. The complainants and defendants in this cause were the holders of the mortgage bonds. Prima facie, all were entitled to share equally in the proceeds. The complainants denied that this was true, and brought the suit to assert their right first to be paid. The defendants made answer controverting the allegations of the bill, and coupling their defense with a prayer for the relief which was finally accorded them by the decree which is appealed from. They had equities in the subject-matter of the suit, the protection of which, as the case then stood, did not require such affirmative relief as is the function of a cross bill. They would have secured all they sought by their answer if the complainants had been adjudged not entitled to the relief they sued for. The subsequent sale and distribution of the fund made necessary the affirmative relief which was prayed for in the answer and granted in the decree. The petition on the application to amend the decree brought all the necessary facts before the court, and for that purpose may be deemed a pleading in the nature of a supplemental answer. Under such pleadings the court had the power to decree all the relief the defendants were entitled to. In Fost. Fed. Pr. § 170, it is said:

"Although a defendant can, by his answer, obtain the benefit of any defense he may have against the plaintiff's claim, he can, except in a very few cases, obtain no relief against the latter in the same suit beyond what results necessarily from the denial of the prayer of the bill."

In Bradford v. Bank, 13 How. 69, the court said:

"The more modern course of proceeding is to dispense with the cross bill, and make the same decree upon the answer to the original bill that would be made if a cross bill had been filed, if the defendant submits in his answer to a performance of the real agreement between the parties. The answer is viewed in the light of a cross bill, and becomes the foundation for a proper decree by the court."

But, in any view of the case, the objection that the affirmative relief which was prayed for in the answer should have been sought by a cross bill is one that could be waived, and an objection upon that ground, first made after the entry of a decree of the supreme court decreeing defendants to be entitled to the relief so prayed for, certainly comes too late. Kelsey v. Hobby, 16 Pet. 269, 277.

It is next contended that the decree in the foreclosure suit, holding the bonds of the appellants to be a first lien upon the mortgaged property, estops the appellees to enforce their decree in this suit. It is urged that the bondholders were all represented by the trustee in the foreclosure suit; that the decree in that suit remains unappealed from, and unreversed; and that the question of the validity of all the bonds was there litigated and determined. The appellees cannot be said to have been parties to the foreclosure suit in any sense other than that the complainant therein, the trustee, represented the holders of all the bonds for the purpose of foreclosure. The trustee sustained that relation only for the enforcement of the lien and the collection of the debt. So far as concerned the debtor and other lien holders, if any there were, it represented all the bondholders

who were protected by the deed of trust. While it is true that the trustee had commenced the foreclosure with a bill which averred that the bonds of Moran Bros. should be first paid, it did not make the holders of the other bonds, the appellees herein, parties to the suit, nor did it seek to have them brought in. On the contrary, Moran Bros., the holders of the bonds which the trustee was seeking to pay in preference to the others, commenced the suit which is now here on appeal, and brought the appellees into court to defend the same. We are unable to see how Moran Bros. can now say that the decree rendered in the suit so commenced by them is not binding upon all the parties thereto. It is only where the trustee acts for the bondholder within the scope of the powers conferred upon him by the deed of trust that his acts bind the latter. When he denies the right of the bondholder in proceedings to foreclose, the latter may make application to the court to be admitted as a party to the litigation, or he may, as in this case, bring the subject before the court in a new or ancillary suit. From the moment the trustee denied the rights of the appellees it had no power to bind them by any act, except so far as the opposite parties to the foreclosure suit were concerned. It was trustee still to foreclose the mortgage and collect the funds, but for no other purpose. The decree, therefore, of the circuit court, adjudging that the appellees' bonds should not rank with the bonds of the appellants, was a decree in a cause to which the appellees were not parties or represented, and is not binding upon them. Williams v. Gibbes, 17 How. 254.

It is further contended that the court erred in rendering a personal judgment against the appellants for the proportionate amount due the appellees upon their bonds, and interest thereon. It is said that Moran Bros. paid, not money, but bonds, for the mortgaged property, and that it is not within the issues presented in this case to enter a personal judgment against them for money, and enforce its payment by execution. In the theory of the law the sale was made for money, and the purchase price was paid in money, and paid into court. The decree ordering the sale directed that the proceeds be brought into court, and held for disbursement according to the further order and decree of the court. Subsequently the order of distribution was made decreeing that the money be paid first to the costs of sale; second, to the complainants' costs of suit; third, to an attorney's fee for complainants; and, fourth, to the payment of the 310 bonds of the complainants. It may be true that the complainants, in making the purchase, paid no money to the master who made the sale, save and except sufficient to cover the costs, and that payment of the remainder of the purchase price was made by the surrender of their bonds; but that fact does not affect the question under consideration. If the complainants, under the terms of the mortgage and the decree, were permitted to pay in bonds, it was for their convenience only. If the circuit court had arrived at a different conclusion concerning the appellees' bonds, and had decreed in the order of distribution that they share equally with the others, Moran Bros. would have been required to pay into court at that time a sum of money sufficient for that purpose. From the decision of the

supreme court it now appears that the order of distribution was erroneous; that the circuit court, instead of directing the payment of $368,968.89 to Moran Bros., should have ordered that $33,419.57 of that sum be paid to the appellees herein. In pursuance of the mandate of the supreme court the circuit court had clearly power to order either that Moran Bros. pay into court the sum so received by them erroneously, or that they pay the same directly to the persons who are entitled to receive it. The latter course was pursued, and we find no error therein. The decree is affirmed, with costs to the appellees.