HOLLAND TRUST COMPANY, Plaintiff, *v.* THE THOMSON-HOUSTON ELECTRIC COMPANY of New York, Formerly Known by the Name of EAST RIVER ELECTRIC LIGHT COMPANY, and Others, Defendants. GEORGE W. MASLIN, Purchaser, Respondent; JOHN N. HAYWARD and Others, Appellants.

*Mortgage by a corporation preferring past-due interest coupons — a purchaser at the foreclosure sale with notice must redeem the coupons — estoppel — laches.*

A mortgage providing that, in the distribution of surplus moneys arising upon a sale thereunder in the case of there not being sufficient to pay in full all the bonds and coupons secured thereby, accrued interest should be first paid in the order of the maturity of the coupons representing the same, was foreclosed because of a default in the payment of coupons which matured on September 1, 1893, and a decree of foreclosure and sale was entered on October 30, 1894. On the day before the sale Hayward and Coleman, who held coupons which matured before September 1, 1893, obtained an order to show cause, on the return of which, on November 27, 1894, the court, by the consent of all parties, including one George W. Maslin, who purchased the mortgaged premises, ordered the referee, before he made distribution, to take proof as to whether these outstanding coupons were valid and entitled to priority.

The property was sold on November 23, 1894, to George W. Maslin, acting for a syndicate, under terms of sale, duly approved by the court, which required the present payment of $1,000 and provided that "the balance of the purchase price not required to be paid in cash may either be paid in cash, or the purchaser may satisfy and make good said balance of his bid in whole or in part by paying over or surrendering outstanding bonds secured by the mortgage * * * now being foreclosed, said bonds being received at such price and value as shall be equivalent to the amount that the holder thereof would be entitled to receive thereon in case the entire price was paid in cash." George W. Maslin, as trustee, after November twenty-seventh, paid $1,000 in cash and surrendered sufficient bonds to make up the rest of the sum of $50,000.

Subsequently, and after Maslin had conveyed the property to the Madison Square Light Company (which had given in return therefor certain securities which had been distributed among the bondholders), the referee reported that the coupons of Hayward and Coleman were entitled to priority of payment.

*Held*, that as, by the order made November twenty-seventh and before he closed the purchase, Maslin knew of the claim of Hayward and Coleman, he was bound to do the same thing as if their rights had been defined in the original decree and to pay the amount of these coupons in cash;

That the holders of the coupons were not concluded by the order confirming the sale, as it was made without notice to them and as the reference under the order of November twenty-seventh was not then ended;

That no estoppel resulted from the fact that the securities of the Madison Square Light Company, to whom the mortgaged premises had been conveyed by Maslin as trustee for the bondholders' committee, had been distributed among the bondholders, of whom several were also holders of the preferred coupons, for the reason that the rights of the coupon holders and those of the same persons as general bondholders were distinct and independent;

That inasmuch as the coupon holders procured the order to show cause before the sale, they must be held to have acted promptly, and that no *laches* could be attributed to them from the fact that the referee did not report upon the question of the priority of the coupons until December 28, 1895.

APPEAL by John N. Hayward and others, holders of certain coupons, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 6th day of April, 1896, denying their motion to compel the purchasers on foreclosure of the property of the defendant, the Thomson-Houston Electric Company of New York, formerly the East River Electric Light Company, to deposit with the referee so much of the sum of $49,000 as may be necessary to pay their coupons in full, and, in default thereof, that a resale of the mortgaged premises be directed.

In September, 1889, the Thomson-Houston Electric Company mortgaged all of its property and franchises to the plaintiff to secure an issue of $600,000 of bonds bearing interest at six per cent. The mortgage provided for the distribution of surplus moneys arising upon the sale as follows : " To the payment of the whole amount of principal and interest which shall then be owing or unpaid upon said bonds and coupons; and in case such proceeds shall not suffice to pay in full said principal and interest, they shall be paid ratably in proportion to the amounts owing and unpaid upon said bonds and coupons respectively, and without preference, *except that the accrued interest shall first be paid in the order of the maturity of the coupons representing the same."* On account of a default in the payment of coupons maturing September 1, 1893, foreclosure was commenced, which resulted in a decree of sale on October 30, 1894. The appellants are holders of coupons maturing prior to the date of September 1, 1893. The sale of the mortgaged property was advertised by the referee for November 23, 1894. On November twenty-second the appellants, Hayward and Coleman, obtained an order to show cause why the judgment of fore-

closure should not be vacated and the report of the referee sent back to him for further proof as to the amounts due to the appellants and other coupon holders. The motion came on to be heard on November twenty-seventh, and was dismissed so far as it sought to vacate the judgment. It was, however, ordered "that Francis P. Lowery, Esq., the referee, be and he is hereby authorized and directed, before making distribution of the proceeds of the sale, \* \* \* to take proof and report whether the coupons of the said Hayward and Coleman and other outstanding coupons not heretofore presented to the referee are valid and entitled to priority, and whether said coupons are entitled to share at all, and, if so, in what proportion in the said proceeds of sale, and the said decree, so far as it applies to the distribution of said proceeds and the confirmation of the report herein provided, may hereafter be amended *nunc pro tunc.*" In the meantime, on November twenty-third, the property was sold to the respondent Maslin. On September 25, 1894, a reorganization agreement had been drawn up and signed by all the bondholders and a committee appointed. Maslin, in buying, was acting for this committee, which was authorized to purchase and hold the property in trust for the subscribers to the agreement. The purchase was made in accordance with terms of sale which had been approved by the court on November seventh. They provided for the payment of $1,000 in cash, and that "the balance of the purchase price not required to be paid in cash may either be paid in cash or the purchaser may satisfy and make good said balance of his bid in whole or in part by paying over or surrendering outstanding bonds secured by the mortgage of said East River Electric Light Company now being foreclosed; said bonds being received at such price and value as shall be equivalent to the amount that the holder thereof would be entitled to receive thereon in case the entire price was paid in cash." Maslin, as trustee, paid the $1,000 in cash and made the rest of the payment by the surrender of bonds. The purchasers thereupon organized the Madison Square Light Company and transferred the property to it. The securities of this company were then distributed among the bondholders *pro rata.*

The proceedings before the referee to determine as to the coupons to be paid continued for some months. On December 28,

1895, he reported: " That all of said coupons (the appellants')
are entitled to priority in the order of the dates upon which the said
coupons are expressed to become due and payable respectively, and
that said coupons are entitled to share in the proceeds of the sale
heretofore had in this action to the full amount of their face value."
The application under review was then made.

*A. J. Dittenhoefer* and *David Gerber*, for the appellants.

*Eustace Conway*, for the respondent George W. Maslin, purchaser.

*George L. Nichols*, for Edison Light and Power Installation Company and another, respondents.

BARRETT, J.:

The application for a resale was properly denied. There was no
infirmity in the sale itself, nor in the judicial proceedings which pre-
ceded it. The purchaser, Maslin, undoubtedly obtained a good and
valid title from the referee, and he has given a good and valid title
to his grantee.

The practical question, therefore, is whether Mr. Maslin paid the
referee for the property in accordance with his agreement. At the
sale he bid $50,000, and it is conceded that of this sum he has paid
but $1,000 in cash. For the balance he says in his affidavit that he
gave the referee " *sufficient bonds* of the said Thomson-Houston Elec-
tric Company of New York to meet the requirements of said terms
of sale." What, then, were these requirements? We find that they
called for the payment of $1,000 in cash at the time of bidding.
They also called for the payment in cash of such further portion of
the purchase price as the court might direct in order to meet the
expenses of the suit. But no such direction seems to have been
necessary and none such was here made. The balance of the pur-
chase money " not required to be paid in cash "— so read the terms
of sale — was either to be paid in cash or by the surrender of out-
standing bonds secured by the mortgage under foreclosure. In case
of the payment of such balance by the surrender of these bonds, it
was further provided that the latter should be received by the
referee " at such price and value as shall be equivalent to the amount
that the holder thereof would be entitled to receive thereon in case
the entire price was paid in cash." In closing the sale, the referee

and purchaser acted upon the assumption that no part of the $49,000 — the balance of the purchase money then remaining unpaid — was required to be paid in cash, and consequently the referee accepted bonds for the entire balance. It must be conceded that these bonds were taken at a price equivalent to the amount that Mr. Maslin would have been entitled to receive had he paid the $49,000 in cash. Such were the requirements of the terms of sale, and Mr. Maslin says that he surrendered to the referee sufficient of these bonds to meet these requirements. The assumption upon which the sale was thus closed was, however, inaccurate, as the holders of the unpaid coupons in question — the appellants — were clearly entitled to payment in cash. Under the terms of the mortgage, it was expressly provided that, upon a sale thereunder, the accrued interest " shall first be paid in the order of the maturity of the coupons representing the same." The coupons held by the appellants represent this accrued interest, and, consequently, the purchaser could not escape the payment of a sufficient sum to satisfy them. The right of these coupon holders to priority in payment has since been judicially determined by the referee to whom the subject was referred, and his decision has not been excepted to or appealed from. It is, therefore, conclusive upon the parties now before the court, for the purchaser was also a party to this reference. It is quite clear, therefore, that the referee originally erred in accepting bonds for the whole balance of the purchase money, namely, for the entire $49,000. The terms of sale only authorized the surrender of bonds for such part of the purchase money as *was not required to be paid in cash.* That is, for which cash was not needed. In other words, for that part of the purchase money left for *pro rata* distribution among the bondholders after the payment of the " accrued interest " represented by the coupons in question. There could have been no mistake or misunderstanding on this head. The purchaser knew, or should have known, precisely how he stood ; and he must have acted deliberately in closing the sale as he did. He cannot justly complain if he is now required to do what he was then bound to do. In truth, he took his chances, and surrendered bonds for that part of the purchase money which he knew would be required of him in cash in case the applicants should be successful upon the subsequent hearing which was provided for. A brief reference to the facts will render this

quite clear. The sale took place on the 23d of November, 1894. The day before (the twenty-second) the appellants procured and served an order to show cause why the judgment should not be vacated and the report sent back to the referee to take evidence with regard to these coupons. Mr. Maslin represented a reorganization committee of the bondholders, and he says that the service of these motion papers was the first notice he or the committee had of the existence of these outstanding coupons. The important fact, however, is that *he then had notice* of their existence and of the appellants' claim. With that notice he bid $50,000 at the sale the next day. To quote his own words: "The arrangements being all completed, *and there being no stay*, the referee went on with the sale, and deponent purchased, as heretofore set forth." Upon the twenty-seventh of the same month (November), and before Mr. Maslin took his deed, the appellants' motion came on to be heard. All parties, including the purchaser, were represented. Affidavits were read upon behalf of Mr. Maslin as well as upon behalf of the plaintiff in the foreclosure suit. Thereupon, an order was made dismissing the motion to set aside the judgment, but directing the referee, before making distribution of the proceeds of the sale, to take proof and report whether these coupons were valid and entitled to priority, and whether they were entitled to share at all, and if so, in what proportion, in the proceeds of the sale. And it was further directed that the decree, so far as it applied to the distribution of the proceeds of sale and the confirmation of the report might thereafter be amended *nunc pro tunc.*

It appears that this order, notwithstanding its form, was really made upon consent of all parties, including the purchaser. Thus, upon the 27th of November, 1894, *and prior to the closing of the sale*, Mr. Maslin substantially agreed that the rights of the coupon holders, whatever they really were, should be embodied in the judgment as of its original date. Necessarily he proceeded thereafter to complete his purchase precisely as though those rights had already been so embodied in the judgment. If those rights turned out to be none other than the rights of the bondholders generally, as represented by the committee, well and good. He would then be safe, under the terms of sale, in turning in bonds alone. If, however, those rights turned out to be the right to priority of pay-

ment of these coupons in cash, then he knew that that adjudication would relate back under the order to which he was a party, and become part of the original decree of foreclosure; and, consequently, that cash, to the extent of those coupons, would "be required" of him.

He tells us that the reorganization agreement made no provision for these coupons and that the committee had and has no funds to meet the claim made thereunder. But he knew that just as well when he took his deed as he does now. He bid $50,000 for the property with notice of the appellants' claim. If he made the bid under misapprehension, he should have asked to be relieved from his purchase. He was not compelled to take the deed. He did so voluntarily. He did so after full and adequate provision had been made, with his knowledge and consent, for the protection of these coupon holders. Due effect must now be given to the order granting this protection. The purchaser should now do what he would have had to do upon the closing of the sale if the rights of the coupon holders had originally been embodied in the decree of foreclosure. That is, he should pay in cash the full amount of these coupons. This is in precise accord with the principle laid down in the well-considered case of *Moran* v. *Hagerman* (64 Fed. Rep. 499) where a similar order to that now asked was made some six years after the sale, and where similar procedure was fully sanctioned.

There are several minor points which should be briefly noticed : *First,* as to the confirmation of the report of sale. That confirmation was not upon notice to these coupon holders. They only learned of the terms of sale after the order of confirmation had been made ; in fact, while the hearing under the order of November 27, 1894, with regard to the validity of these coupons, was pending. At that time they could have done nothing to alter the existing status. All they could then do was to proceed with the reference, and await its result. But, as we have seen, the appellants do not really quarrel with the sale. What they insist upon is, that the terms of sale, as such judgment shall be amended *nunc pro tunc,* shall be complied with.

*Second,* as to the alleged estoppel. It seems that, under the reorganization agreement, the property has been transferred to a

new company, and the securities of this new company have been distributed among the bondholders. The claim is now made that, by accepting the securities of this new company, the coupon holders have put it out of their power to enforce the preferential lien in question. This claim cannot be sustained. The rights of the "accrued interest" coupon holders and of the same persons as general bondholders were distinct and independent. They were entitled to preferential payment so far as the coupons in question were concerned, and they were also entitled to their fair share of the securities of the new company under the reorganization agreement. The whole trouble seems to have resulted from the fact that these coupons were overlooked in the scheme of reorganization. But, as we have already seen, the time to rectify this omission was when the appellants' claim was made. The committee could then have sought a modification of the reorganization agreement with respect to these coupons, and, if that failed, they could have abandoned the scheme. Unfortunately, they insisted upon completing the transaction without protecting themselves with regard to the new obligation which was then sprung upon them. It is quite clear that those who were pressing for payment of the old coupons in cash waived none of their rights in that regard by the acceptance of what they were also entitled to under the reorganization agreement. There is nothing inconsistent between their position as independent coupon holders and their position as bondholders under the reorganization agreement. These observations, however, apply only to the appellants Hayward and Durkee. As to the other appellant, Coleman, no such question can arise, as he was not a bondholder nor a party to the reorganization agreement.

*Third*, the claim of *laches*. This is entirely without merit. There was, in truth, no *laches*. The appellants acted promptly in making their claim before the sale. They, in fact, secured that claim by the order of November 27, 1894, which, as already observed, was made before Mr. Maslin took title. It was quite immaterial thereafter whether or not the reference proceeded diligently. The only effect of subsequent delay was that which pertains in any ordinary litigation, namely, delay in ascertaining whether or not the purchaser should pay cash for these coupons, or whether they should be thrown out and his payment in bonds sus-

tained.   This delay had no relation to the closing of the sale or to the acceptance of bonds.   Nor did it cause any change in the existing status.   Mr. Maslin took his deed, and subsequently gave his deed, with full knowledge of the situation and with a clear understanding that, if the referee decided against him — for he was a party to the reference and to the contest there, as well as to the order which directed the reference — he would have to pay these coupons in cash.   Having taken the risk, he must abide the consequences of the coupon holders' success.

It follows that the order appealed from should be reversed, with ten dollars costs and disbursements of the appeal, and the appellants' application granted, with ten dollars costs and the expenses of the reference, so far as to require the purchaser, George W. Maslin, to pay to the referee, for the use of the appellants, the amounts found due to them respectively, with interest, as prayed for.

Van Brunt, P. J., Patterson, O'Brien and Ingraham, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, and application granted as stated in opinion, with ten dollars costs and expenses of reference.