# UNITED STATES *ex rel.* ANGARICA *v.* BAYARD.

ERROR TO THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

No. 1241. Argued January 5, 1888.—Decided April 30, 1888.

On a petition for a writ of mandamus to the Secretary of State to compel him to pay to the petitioner the interest or income derived from the investment of a sum of money received by a predecessor of his, in office, as part of an award made by the Spanish-American Claims Commission, which sum of money had been eventually paid to the petitioner: *Held,* that the Secretary was not liable to pay such interest or income, because

(1) The award was to be paid by the Spanish government to the government of the United States.

(2) It was paid by the Spanish government to the Secretary of State of the United States, representing the government of the United States.

(3) The money withheld was withheld by the United States, and the petitioner's claim, based on the withholding, was a claim against the United States.

(4) The case fell within the well-settled principle that interest is not allowed on claims against the United States, unless the government has stipulated to pay interest, or it is given by express statutory provision.

(5) No claim for the allowance of interest could be predicated on the language of any notification, or circular or letter which issued from the Department of State, during the administration of a predecessor of the Secretary; no binding contract for the payment of interest was thereby created; and the present Secretary was at liberty to act on his own judgment, irrespective of anything contained in any such notification, circular or letter.

THIS was a petition for a mandamus. The writ was refused, and the relator sued out this writ of error. The case is stated in the opinion.

*Mr. Edward K. Jones* for plaintiff in error. *Mr. F. R. Coudert* was with him on the brief.

*Mr. Assistant Attorney General Maury* for defendant in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

In this case, Lùtzarda Angarica de la Rua, executrix of the estate of Joaquin Garcia de Angarica, deceased, presented a petition to the Supreme Court of the District of Columbia, praying for a writ of mandamus to be issued to Thomas F. Bayard, Secretary of State of the United States, to pay the petitioner the amount of the interest or income derived from a certain investment of money. The case was heard in the first instance by the general term of that court, which rendered a judgment, on the 7th of December, 1885, dismissing the petition, with costs, on the ground that mandamus was not the remedy applicable to the case stated in the petition. 4 Mackey, 310. The petitioner has brought a writ of error in the name of the United States, on her relation, to reverse that judgment.

The following are the material facts of the case: On the 12th of February, 1871, an agreement was concluded between the United States and Spain, for the settlement of certain claims of citizens of the United States, 17 Stat. 839, of which a copy is set forth in the margin.[1]

---

[1] "Memorandum of an arbitration for the settlement of the claims of citizens of the United States, or of their heirs, against the government of Spain for wrongs and injuries committed against their persons and property, or against the persons and property of citizens of whom the said heirs are the legal representatives, by the authorities of Spain, in the Island of Cuba, or within the maritime jurisdiction thereof, since the commencement of the present insurrection.

"1. It is agreed that all such claims shall be submitted to arbitrators, one to be appointed by the Secretary of State of the United States, another by the Envoy Extraordinary and Minister Plenipotentiary of Spain at Washington, and these two to name an umpire who shall decide all questions upon which they shall be unable to agree; and in case the place of either arbitrator or of the umpire shall from any cause become vacant, such vacancy shall be filled forthwith in the manner herein provided for the original appointment.

"2. The arbitrators and umpire so named shall meet at Washington within one month from the date of their appointment, and shall, before proceeding to business, make and subscribe a solemn declaration that they will impartially hear and determine, to the best of their judgment, and according to public law and the treaties in force between the two countries

Pursuant to the agreement, the arbitrators and the umpire were appointed, and a commission thus composed, generally

and these present stipulations, all such claims as shall, in conformity with this agreement, be laid before them on the part of the government of the United States; and such declaration shall be entered upon the record of their proceedings.

"3. Each government may name an advocate to appear before the arbitrators or the umpire, to represent the interests of the parties respectively.

"4. The arbitrators shall have full power, subject to these stipulations, and it shall be their duty, before proceeding with the hearing and decision of any case, to make and publish convenient rules prescribing the time and manner of the presentation of claims and of the proof thereof; and any disagreement with reference to the said rules of proceeding shall be decided by the umpire. It is understood that a reasonable period shall be allowed for the presentation of the proofs; that all claims, and the testimony in favor of them, shall be presented only through the government of the United States; that the award made in each case shall be in writing, and, if indemnity be given, the sum to be paid shall be expressed in the gold coin of the United States.

"5. The arbitrators shall have jurisdiction of all claims presented to them by the government of the United States for injuries done to citizens of the United States by the authorities of Spain, in Cuba, since the first day of October, 1868. Adjudications of the tribunals in Cuba concerning citizens of the United States, made in the absence of the parties interested, or in violation of international law or of the guarantees and forms provided for in the treaty of October 27. 1795, between the United States and Spain, may be reviewed by the arbitrators, who shall make such award in any such case as they shall deem just. No judgment of a Spanish tribunal, disallowing the affirmation of a party that he is a citizen of the United States, shall prevent the arbitrators from hearing a reclamation presented in behalf of said party by the United States Government: nevertheless, in any case heard by the arbitrators, the Spanish Government may traverse the allegation of American citizenship, and thereupon competent and sufficient proof thereof will be required. The commission having recognized the quality of American citizens in the claimants, they will acquire the rights accorded to them by the present stipulations as such citizens. And it is further agreed that the arbitrators shall not have jurisdiction of any reclamation made in behalf of a native-born Spanish subject, naturalized in the United States, if it shall appear that the same subject-matter having been adjudicated by a competent tribunal in Cuba, and the claimant, having appeared therein, either in person or by his duly appointed attorney, and being required by the laws of Spain to make a declaration of his nationality, failed to declare that he was a citizen of the United States: in such case. and for the purposes of this arbitration, it shall be deemed and taken that the claimant, by his own default, had renounced his allegiance to the United

known as the "Spanish-American Claims Commission," was established. Angarica filed a claim before the commission, and it decided that he had a right to recover damages to the amount of $748,180, with interest at 6 per cent per annum thereon from November 1, 1875, to the day of payment. The full amount of the award was paid to the Secretary of State of the United States in two instalments, namely, March 27, 1877, $406,894.96, and, October 8, 1877, $415,699.75, making a total of $822,594.71. The whole amount was paid over by the Secretary, except $41,129.74, being 5 per cent of the amount received, which sum the Secretary retained until the government of Spain should make provision for paying the expenses of the commission. Of the $41,129.74 so retained, so much as could be utilized for the purpose was invested in securities of the United States, and thereafter the surplus, with the interest which accrued on the first investment, was similarly invested, and so were subsequent accumulations of interest.

In a circular letter addressed by the then Secretary of State to Angarica, when the 5 per cent was withheld, it was said: "Five per centum of the amount due in each case will be reserved for the present, to meet the expenses of the commission, until a payment to cover such expenses shall have been made by Spain in conformity with the provision in that regard of said agreement of February 12th, 1871, between the United States and Spain."

In a report made by Mr. Evarts, Secretary of State, to the President, dated February 16, 1880, and transmitted by him

States. And it is further agreed that the arbitrators shall not have jurisdiction of any demands growing out of contracts.

"6. The expenses of the arbitration will be defrayed by a percentage to be added to the amount awarded. The compensation of the arbitrators and umpire shall not exceed three thousand dollars each; the same allowance shall be made to each of the two advocates representing respectively the two governments; and the arbitrators may employ a secretary at a compensation not exceeding the sum of five dollars a day for every day actually and necessarily given to the business of the arbitration.

"7. The two governments will accept the awards made in the several cases submitted to the said arbitration as final and conclusive, and will give full effect to the same in good faith and as soon as possible."

to the Senate, the Secretary stated that " this retention of 5
per centum may be regarded as provisional only, the commis-
sion not having yet taken the final step of adding a percentage
to the amount of its awards in order to meet the expenses of
the commission." The then Secretary of State also notified
Angarica that " it is hoped that no great delay will occur in
receiving the payment from Spain, which will liberate this
reserve for expenses, and the Department will expect to keep
this reserve invested in interest-bearing securities of the United
States, to cover the delay in its distribution to the claimants."
On the 12th of February, 1885, Mr. Frelinghuysen, then
Secretary of State, paid to the petitioner the $41,129.74, but
did not pay any interest or income which had been earned by
its investment. Correspondence thereupon ensued between
the attorneys for the petitioner and Mr. Frelinghuysen, in
regard to the payment of such interest, in which such attor-
neys referred to a letter written to them on the 13th of Sep-
tember, 1880, by Mr. Evarts, then Secretary of State, in
which they alleged that he had officially promised to pay the
interest earned on the money ; but no copy of such letter is
found in the record. Mr. Frelinghuysen declined to pay any
interest. The attorneys renewed the correspondence with Mr.
Bayard, in October, 1885, but he refused to pay the interest,
on the ground that the matter had been decided by his prede-
cessor, and that his decision was in accordance with the almost
unbroken rulings of the executive and judicial departments
of the government, citing the opinion of Attorney General
Cushing, 7 Opinions Attorneys General, 523, and the case of
*Gordon* v. *United States*, 7 Wall. 188. Further correspond-
ence ensued, and, in one letter, Mr. Bayard stated that the
investment of the retained moneys was in pursuance of the
general system founded on § 2 of the act of September 11,
1841, c. 25, 5 Stat. 465, now § 3659 of the Revised Statutes,
by which it is prescribed that " all funds held in trust by
the United States, and the annual interest accruing thereon,
when not otherwise required by treaty, shall be invested in
stocks of the United States, bearing a rate of interest not less
than five per centum per annum ; " that, the enactment being

silent as to the beneficiary by such a transaction, " the sole competence of Congress, which prescribed the mode of investment, to direct the disposition of the proceeds, is beyond dispute ; " that Congress exercised its discretion in regard to the payment of interest in the case of the Japanese indemnity fund and in the case of the Alabama Claims fund ; that it is *res adjudicata* that the Secretary of State has no discretionary power to dispose of the accumulations resulting from investments made in pursuance of the act of September 11, 1841; and that, therefore, he cannot be bound by what he deems to have been the improvident intimation contained in Mr. Evarts's letter of September 13, 1880. In reply to a further letter from the attorneys, Mr. Bayard, while furnishing them with a statement of the amount of the original award and its date, and of the amount received from Spain and the date of its receipt, and of the amount paid to the estate of Angarica, less the 5 per cent previously retained, and of the date of such payment, and of the amount of the 5 per cent retained, declined to state whether such 5 per cent was invested in government or other securities, and, if so, the date of the investment, and what part of it was so invested, and from what date it earned interest, or any other particulars in regard to any investment, except to state ": that, of the 5 per cent retained by the Department of State, so much as could be utilized for the purpose was invested in securities of the United States, and that thereafter the surplus, with the interest which accrued on the first investment, was similarly invested, and so were subsequent accumulations of interest ; " and that, to give the further detailed information asked for, would be in effect conceding to private parties an accountability which he owed to Congress alone.

The petition, after setting forth the foregoing facts, alleges that, as matter of law, the said interest or income is an incident to the principal fund and follows the same ; that the fund due and payable to the petitioner is a liquidated and fixed sum of money, involving no accounting, and which it is the ministerial duty of the Secretary to pay to the petitioner ; and that such payment does not involve the exercise of any

discretion, nor concern any international matter connected with the foreign relations of the United States. It also alleges that the sum of $41,129.74, retained by the Secretary from the award in favor of Angarica, formed part of a general fund, composed of various sums similarly retained by the Secretary from awards made in favor of other claimants, and received in instalments at different times, the total of such reserves amounting to $77,887.04; that these amounts were from time to time invested in such sums and in such manner as was practicable, without reference to the separate and individual interests involved; that the income on these investments resulted in part from the sale of gold coin, in part from premiums on United States bonds sold and exchanged without reference to the shares of the several claimants, and in part from interest on such bonds, and amounted in all to $14,485.50; that such increment is not traceable, in separate or respective amounts, to any particular percentages of individual claimants; and that no apportionment of such increment has been made by the Secretary among the respective claimants. The prayer of the petition is for a writ of mandamus commanding the Secretary to apportion and pay to the petitioner her proportion of the increment attributable to the sum of $41,129.74, so reserved from the award made in favor of her testator.

The Secretary answered the petition as follows: "This respondent, admitting the matters and things set forth and averred in the said petition, except as hereinafter excepted, answering, saith, that it is not true, as stated in the third paragraph of the said petition, that the Spanish-American Claims Commission 'duly awarded a judgment in favor of said Joaquin Garcia de Angarica and against the said Kingdom of Spain for the sum of $748,180, with interest at the rate of six per centum per annum from the 1st day of November, 1875, until paid;' but this respondent saith, that an award or judgment for a like sum of money and for like interest was made and rendered by the said commission in favor of the United States of America, and that the said Joaquin Garcia de Angarica was no party to any proceedings at any time pending before the said Spanish-American Claims

Commission; and, as a consequence, this respondent doth also deny that the said sum of money, with the interest thereon, was paid unto the Secretary of State of the United States to the use of, or to be paid to, the said Joaquin Garcia de Angarica, as is averred in the fourth paragraph of the said petition, or that, upon the said payment, it became the duty of the Secretary of State to pay the same to the said petitioner's testator in satisfaction of any judgment or award, for this respondent doth aver, that, when the said money was received by the then Secretary of State, it came to his hands coupled with duties to the United States and possible duties to the Kingdom of Spain, which duties were in the one case, and would have been in the other case, paramount and superior to any duty in the premises to the said petitioner or her testator. And this respondent, further answering, saith, that the said petition proceeds upon a ground which wholly ignores certain grave international elements and considerations that entered into the claim of the petitioner's testator so soon as the government of the United States began and assumed to urge and prosecute the same, and that thenceforth the said claim became, in contemplation of law, subject to the will of the government of the United States and entirely beyond the control of the said petitioner's testator. And this respondent, further answering, saith, that the interest money demanded in the said petition as the accretion of a part of the said sum of money adjudged and awarded as aforesaid, is the fruit of an investment of the said principal money by the Secretary of State, made in obedience to law and in the performance of a general statutory duty, and not for the use and behoof of the said petitioner's testator. And this respondent, protesting that no agreement to pay the said petitioner or her testator the said interest money was made by the Secretary of State, as is averred in the said petition, doth deny that the Secretary of State could have made a valid agreement in that behalf. And this respondent, further answering, saith, that to place him under the stress of the writ of mandamus, as touching the said interest money, would be subversive of the established principle, that the government of the United States does not

pay interest to its citizens, as damages for the detention of money. And this respondent, further answering, saith, with all deference and respect, that, as the representative of the President of the United States in carrying out a treaty, he cannot hold the relation of trustee toward any citizen, saving in the larger sense that every public functionary is clothed with a trust, and that he cannot be controlled or directed in the performance of any such duty at the suit of any citizen."

We are of the opinion that the judgment of the court below must be affirmed. Under the agreement for arbitration, the claim of Angarica was to be laid before the arbitrators and umpire " on the part of the government of the United States."

The claim and the testimony in its favor were to be presented " only through the government of the United States." In another place the claim is spoken of as one presented to the arbitrators " by the government of the United States." In the sixth clause, the two advocates are spoken of as " representing respectively the two governments," and in the seventh clause it is said that " the two governments will accept the awards." Thus, by the plain terms of the agreement, the amount of the award in the case of Angarica was to be paid by the Spanish Government to the government of the United States. It was paid by the Spanish Government to the Secretary of State of the United States, representing the government of the United States.

If there was any unlawful withholding from the petitioner of the $41,129.74, the money was withheld by the government of the United States, acting through the Secretary of State, and any claim of the petitioner, based upon an unlawful withholding, was a claim against the government of the United States. That claim, in the present controversy, assumes the shape of a claim for the increment or income alleged to have been actually received by the United States from the investment of the money for the time it was withheld; but the claim in that respect is not different in character from what it would have been if, instead of being a claim for increment or income actually received by the United States, it were a claim for interest generally, or for increment or income which the United

States would or might have received by the exercise of proper care in the investment of the money.

The case, therefore, falls within the well-settled principle, that the United States are not liable to pay interest on claims against them, in the absence of express statutory provision to that effect. It has been established, as a general rule, in the practice of the government, that interest is not allowed on claims against it, whether such claims originate in contract or in tort, and whether they arise in the ordinary business of administration or under private acts of relief, passed by Congress on special application. The only recognized exceptions are, where the government stipulates to pay interest and where interest is given expressly by an act of Congress, either by the name of interest or by that of damages.

This appears from a succession of the opinions of the Attorneys General of the United States, given by Attorneys General Wirt, Crittenden, Legaré, Nelson, Johnson, Cushing and Black, and appearing in the following volumes and pages of those opinions, as published: 1, 268; 1, 550; 1, 554; 3, 635; 4, 14; 4, 136; 4, 286; 5, 105; 7, 523; 9, 57; and 9, 449.

Not only is this the general principle and settled rule of the executive department of the government, but it has been the rule of the legislative department, because Congress, though well knowing the rule observed at the Treasury, and frequently invited to change it, has refused to pass any general law for the allowance and payment of interest on claims against the government. Such statutes for the payment of interest as have been passed, apply to specific cases enumerated in the several statutes, and do not cover the present case.

The principle above stated is recognized by this court. In *Tillson* v. *United States*, 100 U. S. 43, 47, this court, speaking of the rule that interest is recoverable between citizens if a payment of money is unreasonably delayed, says that with the government the rule is different, and that the practice has long prevailed in the departments of not allowing interest on claims presented, except it is in some way specially provided for. See also *Gordon* v. *United States*, 7 Wall. 188, and *Harvey* v *United States*, 113 U. S. 243, 248, 249.

No claim for the allowance of interest can be predicated in this case upon the language of any notification or circular or letter which issued from the Department of State. No binding contract for the payment of interest was thereby created, and the present Secretary was at liberty to act on his own judgment in the premises, irrespective of anything contained in any such notification, circular, or letter.

Upon these considerations,

*The judgment of the court below in general term is affirmed.*