# KIECKHOEFER v. UNITED STATES.

## SAME v. SAME.

## SAME v. SAME.

---

CRIMINAL LAW; EMBEZZLEMENT OF PUBLIC MONEY.

Money in the charge and within the control of the State Department, paid to the United States on various accounts, by foreign Governments and collected by and through the State Department, commonly known as the "Indemnity Fund," is public money of the

United States within the meaning of Sec. 5488, R. S. U. S.; and the acts of Congress of March 3, 1875, and February 3, 1879, making criminal the unlawful appropriation of public money of the United States by disbursing officers or other persons having the possession or custody of it.

Nos. 1067, 1068, and 1086.   Submitted January 24, 1902.   Decided March 5, 1902.

HEARING on three separate appeals (specially allowed) from orders of the Supreme Court to the District of Columbia, overruling demurrers to indictments.   *Affirmed.*

The COURT in its opinion stated the case as follows:

In these three several cases, involving substantially the same issues, special appeals have been allowed from identical orders entered in each and all the cases by the Supreme Court of the District of Columbia, wherein the cases were all consolidated.   They are all indictments for embezzlement founded upon different statutes, but all for the same acts of embezzlement.   The indictment in the first case, No. 1067, is based upon section 5488 of the Revised Statutes of the United States, whereby it is provided that " every disbursing officer of the United States who   *   *   *   converts to his own use in any way whatever   *   *   *   any portion of the public money intrusted to him, is in every such act deemed guilty of embezzlement."   The indictment in the second case, No. 1068, was found under the act of Congress of March 3, 1875 (18 Stat. 579), which provides that " any person who shall embezzle, steal or purloin any money, property, record, voucher, or valuable thing whatever of the moneys, goods, chattels, records, or property of the United States shall be deemed guilty of a felony   *   *   *   ."   And the indictment in the third case, No. 1086, was found under section 5497 of the Revised Statutes of the United States, as amended by the act of Congress of February 3, 1879 (20 Stat. 280), which provides that " any officer connected with   *   *   *   the internal revenue service, and any assistant of such officer who shall embezzle

\*   \*   \*   any money or other property of the United States, and any officer of the United States or any assistant of such officer who shall embezzle or wrongfully convert to his own use any money or property which may have come into his possession or under his control, in the execution of such office or employment, or under claim or color of authority, as such officer or assistant, whether the same shall be the money of the United States, or of some other person or party, shall, where the offense is not otherwise punishable by some other statute of the United States, be punished by a fine or imprisonment, or both."

The appellant was an employee of the State Department of the United States, wherein he held the position of disbursing clerk, and also that of chief of the bureau of accounts of the Department, and as such he is charged in these indictments with the embezzlement and conversion to his own use of three several sums of money, alleged to be the public money of the United States, the first a sum of $18,229.98, taken on July 2, 1895; the second a sum of $16,837.50, taken on October 22, 1895, and the third a sum of $5,584.92, taken on October 26, 1895. In the first indictment, that in cause No. 1067, there are nine counts, of which the first charges the appellant as a disbursing clerk with the embezzlement of the first-mentioned sum; the second charges him as the chief of the bureau of accounts of the State Department with the embezzlement of the same sum, and the third charges him with the embezzlement of the same sum in his joint capacity as disbursing clerk and as chief of the bureau of accounts. In the fourth, fifth and sixth counts he is similarly charged with the embezzlement of the second sum, that of $16,837.50; and in the seventh, eighth and ninth counts he is charged in like manner with the embezzlement of the third sum, that of $5,584.92.

The second indictment, that of cause No. 1068, contains also nine counts, following closely the lines of the several counts in the previous cause, No. 1067, and substantially the same therewith.

The third indictment, that of cause No. 1086, contains five counts, all charging the appellant with embezzlement

as the chief of the bureau of accounts of the State Department, and of which the first charges him with the taking of $18,229.98; the second with the taking of $16,837.50; the third with the unlawful conversion and appropriation of fifteen United States bonds of the face value of $1,000 each, and the fourth and fifth with similar embezzlement of other bonds.

To each and all of these several indictments, and to each and every count thereof, the appellant interposed a demurrer, in which were set forth several grounds of alleged infirmity in the indictments, the principal of which was that no offense against the law was therein stated. The demurrers were all overruled. The accused thereupon filed a motion for a bill of particulars; and the motion was allowed. Bills of particulars in each case were then filed by the prosecution; and in these bills of particulars it appeared that the several embezzlements alleged were of funds in the custody of the State Department from "moneys paid to the United States on various accounts by foreign governments and collected through the said Department of State." Thereupon there was filed in each case on behalf of the accused a motion to quash the indictment, on the ground of its indefiniteness and insufficiency, and because, as claimed, the bill of particulars stated a different offense from that set up in the indictment. And there was also at the same time filed on behalf of the accused a motion to strike out the bill of particulars and to require the United States to give the accused a better bill of particulars. Both motions were overruled; and it is from the orders overruling them that these special appeals were sought and allowed.

*Mr. A. S. Worthington* for the appellant:

1. Neither section 5488 of the Revised Statutes nor the act of March 3, 1875 (18 Stat. 479), was intended to apply to the indemnity fund, so called, and indictments in the words of those acts or either of them cannot, therefore, be sustained by a bill of particulars relating to such indemnity funds, because that would be to have the accused indicted

by the grand jury for one offense and prosecuted by the district attorney for another. See U. S. R. S., Secs. 3617, 3618, 3620–3634, 3639, 3659, 5488, 5489, 5490, 5491, 5492, 5493, 5494, and 5497. See also *United States, ex rel. Angarica de la Rua,* v. *Bayard,* 4 Mackey, 310, 324; Act of Congress approved February 26, 1896, entitled "Trust Funds" (29 Stat. 32); *The United States* v. *Morgan et al.,* 28 Fed. Rep. 48.

2. In an indictment for embezzlement against a disbursing officer, a bill of particulars is insufficient which simply shows *prima facie* that he was indebted to the Government on a general statement of his account. *The Mary Ann,* 8 Wheat. 380, 389; *United States* v. *Cruikshank,* 92 U. S. 542, 557, 558; *United States* v. *Simmons,* 96 U. S. 360, 362, 363; *United States* v. *Carll,* 105 U. S. 611; *United States* v. *Britton,* 107 U. S. 655, 666, 669; *United States* v. *Britton,* 108 U. S. 193, 196, 197; *United States* v. *Hess,* 124 U. S. 483, 486, 487; *Pettibone* v. *United States,* 148 U. S. 197. See also *People* v. *Cohen,* 8 Cal. 42; *State* v. *Brandt,* 41 Iowa, 592; *State* v. *Griffith,* 45 Kan. 142. Safety lies in adherence to established modes of procedure devised for the security of life and liberty. *Crain* v. *United States,* 162 U. S. 244. Before a man can be punished his case must be plainly and unmistakably within the statute. *United States* v. *Brewer,* 129 U. S. 288. In the courts of the United States an indictment is not amendable, no matter how important the error to be corrected may be and no matter how apparently immaterial the change made in the indictment may seem to the court. *In re Bain,* 121 U. S. 1. The bill of particulars, taken in connection with the indictments, does not even show that it is claimed by the United States that the alleged embezzlement occurred while the defendant was disbursing officer. It is set forth that his term of office expired on a certain day; that there was then a certain balance due, and that *on that day* he committed the alleged offense.

*Mr. Ashley M. Gould,* United States Attorney for the District of Columbia, and *Mr. Hugh T. Taggart,* Assistant, for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

It has been stated on behalf of the appellant that there is no purpose at this time and upon these appeals to seek a review of the question of the sufficiency of the indictments raised by the demurrers interposed thereto. The question raised is only as to the sufficiency of the several bills of particulars filed in explanation of the indictments. On the other hand, we do not understand that any question is made on behalf of the appellee as to the right of the appellant to have a bill of particulars, the necessary purpose of which is to make the indictments certain and definite, when it has already been held on demurrer that the indictments are already sufficiently certain and definite. Consequently we do not regard either of these questions as being now before us.

The principal question — indeed, we may say the only substantial question — that is presented for our consideration, is, whether money in the charge and within the control of the State Department, paid to the United States on various accounts by foreign governments and collected by and through the State Department, commonly known as the "Indemnity Fund," is public money of the United States in the sense of the statutes upon which the indictments against the appellant are founded, so as that the unlawful appropriation of them is punishable as embezzlement under those statutes. And it is to the elucidation of this question that the argument on both sides has been mainly directed.

It is conceded, and it could not well be controverted, that, in the general sense, this indemnity fund is public money of the United States. The point was raised nearly fifty years ago, during the administration of President Pierce, when, upon the claim of the disbursing clerk of the State Department at that time for additional compensation for the charge of the fund on the ground that it was not public money proceeding from any appropriation by Congress, but money collected for and payable to private individuals, Mr. Attorney-General Cushing, to whom the claim was submitted for his opinion, wrote:

" There is nothing in this distinction; that is public money which is disbursed by or for the Government. It is wholly immaterial where it came from or where it goes. *Broome* v. *United States,* 15 How. 143. It was lawfully possessed by the United States in the execution of a treaty, and therefore was, for the present purpose, public money, just as much as if it had been received into the Treasury from taxes and received by Mr. Stubbs (the disbursing clerk) to be disbursed for the salaries of the Secretary and his clerks, or of the diplomatic agents of the United States." Opinions of the Attorneys-General, Vol. 6, p. 590.

Similarly, in the case of *United States, ex rel. Angarica,* v. *Bayard,* 4 Mackey, 310, in the Supreme Court of the District of Columbia, and in the same case in the Supreme Court of the United States on appeal (127 U. S. 251), it was held that these indemnity funds were paid by one government to the other as sovereign, that the power of Congress is supreme in the matter of their control, and that the interest of the individual citizen, in reference to whom the money has been paid, becomes merely a claim against the United States.

Plainly, therefore, this indemnity fund is public money of the United States in the broadest sense of the term. Indeed, it is not apparent how the United States could acquire or hold any money or property whatever except as public money or public property. For the United States exist only for public purposes; and whether they acquire money in the ordinary modes in which revenue is raised for governmental uses, or whether they receive it by way of donation, in trust to be applied to some great public purpose, such as the establishment and maintenance of the Smithsonian Institution, or whether the money has been demanded and recovered from foreign governments as compensation for injuries done to individual citizens and through such citizens to the national sovereignty, notwithstanding that in such case it has been received under moral, although perhaps not legal, liability to pay it out again to the individuals who have suffered such injuries, yet in all cases such moneys

become the public money of the United States as soon as they are received by any of its agents or by any department of the Government, and they remain such as long as they are held by it, or by any such department or agency, or as long as they remain under control of such department or agency.

Beyond any reasonable question, therefore, this indemnity fund under the control of the Department of State and its disbursing officers is public money of the United States under the letter of the statutes on which the indictments before us are founded. Is it not equally public money of the United States within the spirit and the purpose of these enactments? The answer to this question can scarcely be doubtful; and it would seem to be wholly unnecessary to expend argument upon it, or to seek through adjudicated cases for authority to support the proposition that it is both the right and the duty of the United States to protect equally all public money in its charge or within its control from embezzlement and unlawful depredation, whether such money be held in trust or otherwise. And when the United States have sought to extend such protection over all its public money by statutes against embezzlement, which contain no exception, but which on the contrary by their very general terms embrace the special fund here in question, it would be most extraordinary, we think, to seek to read an exception into the law for which there is no warrant in reason, in good morals or in conscience.

Undoubtedly, therefore, embezzlement of the indemnity fund of the State Department, is embezzlement both under the letter and under the spirit of these statutes. Wherein, then, are the indictments liable to objection? Upon what ground can it be assumed that embezzlement of the indemnity fund is lawful, at least covered by no statute, when embezzlement of other public money is punishable by statute? The argument is that, because other statutes make provisions in regard to the public moneys of the United States, which, as it is claimed, cannot be applied to the indemnity money and this indemnity fund has not been

treated as these statutes require the other public moneys to be treated, therefore these statutes for the punishment of embezzlement should not be held to apply to the indemnity fund. For this is the gist of the argument when reduced to its simplest terms; and the very statement of the proposition, in our opinion, would seem to show its fallacy. A brief examination, however, of the circumstances and conditions of this indemnity fund, of the statutes which are supposed to sustain the appellant's contention, and of the law on the subject as determined for us by our tribunal of last resort, may not be inappropriate. ·

Before the passage of the act of Congress of February 26, 1896 (29 Stat. 32), which seems to have been superinduced by the occurrences which gave rise to the indictments. now before us, and which provided that thereafter this indemnity fund and all money held in trust for citizens of the United States and others, should be deposited and covered into the Treasury Department, and should be disbursed to the beneficiaries by the Secretary of the Treasury on certificates of the Secretary of State, it was the custom to retain the indemnity fund within the control of the State Department, to deposit it in a private banking institution in the city of Washington, and to disburse it by the disbursing clerk under the orders of the Secretary of State. When the fund remained unclaimed for any considerable length of time, it was usual to invest it in bonds of the United States, in accordance with the requirement of section 3659 of the Revised Statutes, taken from the act of Congress of September 11, 1841 (5 Stat. 465), which required that trust funds held by the United States should be so invested; and these bonds continued to be held by the State Department in the immediate charge of the disbursing clerk or chief of the bureau of accounts. Neither the money nor the· bonds seem ever to have been deposited in the treasury of the United States, as provided for the other public money of the United States.

Now, numerous statutes are cited which provide for the disposition of the public money, generally, and which have

not been observed in the management and disposition of the indemnity fund. For example, section 3620 of the Revised Statutes, taken from the act of Congress of June 14, 1866 (14 Stat. 64), provided that it should be the duty of every disbursing officer having any public money intrusted to him for disbursement to deposit the same with the Treasurer or some one of the assistant treasurers of the United States: Section 3621 of the Revised Statutes, taken from the same last-mentioned act, provided that every person who should have moneys of the United States in his hands or possession, should pay the same to the Treasurer, an assistant treasurer, or some public depositary of the United States; section 3639, taken from an act of Congress of August 6, 1846 (9 Stat. 60), and other similar acts consolidated with it, provided that all officers, who are custodians of the public money, shall keep the same safely, without loaning, using, depositing in banks, or exchanging for other funds than as specially allowed by law. It is claimed that none of these sections although they all speak generally of the public money, without any specified exception, can apply to the indemnity fund, because the indemnity fund was never treated as subject to such disposal of it.

Even the very section 5488, under which the first of the three indictments of this prosecution have been found, is cited as showing that the public money mentioned in it could not have been intended to include the indemnity fund, for the reason that it contains a prohibition against the deposit of public money by any disbursing officer in any place or in any manner, except as authorized by law. And it is assumed, although not shown, except thus inferentially, that there is no authority of law for the deposit of the indemnity fund otherwise than as other public money is deposited. And finally the Constitution itself is invoked to show what is meant by the expression " *the public money,*" when in the ninth section of the first article, it commands that " no money shall be drawn from the Treasury, but in consequence of appropriations made by law; and a regular statement and account of the receipts and expenditures of all public money shall be published from time to time."

But it is very plain that the constitutional provision has nothing to do with this case. The indemnity fund, before the act of February 26, 1896, never went into the Treasury, and consequently could not have been drawn from the Treasury by appropriation according to law or otherwise. And as to the publication of accounts, it is apparent that this refers to the accounts of the Treasury Department.

Neither does the prohibition of section 5488 against the deposit of public money by a disbursing officer in any place or in any manner, except as authorized by law, aid the appellant's contention with reference to a wholly distinct and independent clause which prohibits such officer from converting any public money to his own use. Moreover, it is not at all apparent that the deposit of the indemnity fund in a private banking institution, in accordance with long usage by the Department of State and with the apparent acquiescence of Congress, was not a deposit of public money according to law. And even if such deposit were unlawful, the doing of one wrong thing is no excuse for the perpetration of another wrongful act. The argument, of course, is, not that either act was wrongful so as to render the person doing them amenable to criminal prosecution under this statute, but that, as the deposit of the indemnity fund in a private banking institution was presumably lawful, that fund could not have been intended by Congress to be included in the category of public money required to be deposited in the Treasury, and therefore was not intended to be included in the category of public money which could be the subject of embezzlement by a disbursing officer.

In answer to this it is sufficient to say that, admitting the premises, the consequence does not at all follow. If it was lawful for this appellant to deposit this money in a private bank, it does not follow that it was lawful for him thereafter to appropriate it to his own use. If it was lawful for the Secretary of State so to deposit it, it does not follow that it was lawful thereafter for the appellant to embezzle it. This section of itself shows nothing whatever in support of the appellant's contention, and gives no war-

rant for any discrimination between the indemnity fund and other public moneys of the United States.

As for the claim that other statutes cited or referred to must be construed so as to exclude the indemnity fund from the category of public money of the United States mentioned in them, and therefore that the statutes upon which these indictments are based must be so construed, the argument, no doubt, would have force if those other statutes were under consideration; but it cannot be admitted that it is here applicable. Section 5488 of the Revised Statutes — and what we have to say of section 5488 may with equal propriety be said of the two others — is a complete enactment in itself, plain on its face, and containing no doubtful words or terms requiring extraneous aid for their interpretation. What Mr. Justice Brown, speaking for the Supreme Court of the United States in the case of *Hamilton* v. *Rathbone*, 175 U. S. 414, said, with reference to the Married Woman's Act in force in this District, is very appropriate here. He said:

" The decisive question then is whether section 728 is to be construed as an independent act, or whether the plaintiff is at liberty, by referring to the prior act from which it was taken, to show that it was the intention of Congress to limit it to the cases named in such prior act. The general rule is perfectly well settled that, where a statute is of doubtful meaning and susceptible upon its face of two constructions, the court may look into prior and contemporaneous acts, the reason which induced the act in question, the mischiefs intended to be remedied, the extraneous circumstances, and the purposes intended to be accomplished by it, to determine its proper construction. But where the act is clear upon its face, and when standing alone it is fairly susceptible of but one construction, that construction must be given to it. *Heydon's Case,* 3 Coke, 76; *United States* v. *Freeman,* 3 How. 556; *Smythe* v. *Fiske,* 23 Wall. 374; *Platt* v. *Union Pacific RR. Co.,* 99 U. S. 48; *Thornley* v. *United States,* 113 U. S. 310; *Viterbo* v. *Friedlander,* 120 U. S. 707, 724; *Lake County* v. *Rollins,* 130 U. S. 662; *United States* v. *Goldenberg,* 168 U. S. 95.

" This rule has been repeatedly applied in the construction of the Revised Statutes." And several cases are cited and considered by the court, which then proceeds to say as follows:

" Indeed, the cases are so numerous in this court to the effect that the province of construction lies wholly within the domain of ambiguity that an extended review of them is quite unnecessary. The whole doctrine applicable to the subject may be summed up in the single observation that prior acts may be resorted to to *solve* but not to *create* an ambiguity. If section 728 were an original act, there would be no room for construction. It is only by calling in the aid of a prior act that it becomes possible to throw a doubt upon its proper interpretation."

This utterance of the Supreme Court would seem to be decisive of the point raised by the appellant in this present case. Indeed, the application of the doctrine would seem to be more cogent here than in the case of *Hamilton* v. *Rathbone*. For here the previous act, from which section 5488 of the Revised Statutes is taken, differs not at all from the section as found in the revision; and the doubt in its construction, if doubt there is, arises wholly from the collocation with it of other statutes, separate and independent of it, and having no necessary connection whatever with it by reference or otherwise. These acts cannot be resorted to to create ambiguity in section 5488, or in the other sections of the Revised Statutes upon which these indictments are founded.

. Nor can we here consider the suggestion that, if the expression, " public moneys of the United States," is to be regarded as having the same meaning in all these enactments and as including the indemnity fund, numerous officers of the United States, including Presidents, Secretaries of State, and disbursing officers of the State Department, as well as the bankers who received this fund on deposit, rendered themselves liable to criminal prosecution. For, as we have intimated, it would be time enough to deal with that case when it arose. In view of the act of February

27

26, 1896, it is probable that it could no longer arise, More-over, it does not follow that, because the statutes now be-fore us are to be taken, both according to their letter and their spirit, to mean precisely what they say, other statutes containing the same expression are to be taken to have the same meaning, with the same force and effect, when per-haps the spirit is wanting which gives life to the letter and the circumstances demand a wholly different construction or a more restricted application of the statutory writing.

From what we have said, it follows, in our opinion, that, for the purpose of the present proceedings, the so-called indemnity fund in the possession and within the control of the Department of State and intrusted by that Department to the custody of its disbursing clerk and chief of its bu-reau of accounts, and with the embezzlement of which the appellant is charged, is public money of the United States within the letter and the spirit, and within the meaning and the intent of section 5488 of the Revised Statutes, the act of Congress of March 3, 1875, and the act of Congress of February 3, 1879, which denounce as criminal the unlaw-ful appropriation of public money of the United States by disbursing officers or other persons having the possession or custody of it, and that, therefore, the decision of the court below in that regard was right.

There are some other questions of minor importance raised in the cause, which it seems to us to be unnecessary here to determine. It is assigned as error, for example, in reference to the seventh, eighth and ninth counts of the second indictment, that the court below held that the bonds therein mentioned were property of the United States within the meaning of the act of Congress of February 3, 1879, whether they were a part of the indemnity fund or not. And it is also assigned as error, in reference to the third indict-ment, that the court below held that it was not necessary in the bill of particulars so to particularize the offense as to show that it was not punishable under any other statute than this act of 1879. And there are some other assign-ments of error of a similar character. These have not

been greatly pressed upon our attention, and it is not apparent that they require consideration from us at this time. Such consideration may well be postponed to the determination of the cases on their merits, when possibly it will be facilitated, or even rendered unnecessary, by the development of the facts and circumstances of the alleged offenses.

It is our conclusion that the orders appealed from should be *affirmed, and that the several. causes should be remanded to the Supreme Court of the District of Columbia for further proceedings therein according to law.    And it is so ordered.*