HENKELS v. MILLER, Alien Property Custodian, et al.

(Circuit Court of Appeals, Second Circuit. January 5, 1925.)

No. 136.

**1. Constitutional law** ☞70(3)—**War** ☞12—**Congress may authorize seizure of property believed to be enemy owned; what constitutes adequate provision for return in case of mistake is for Congress.**

Congress, in time of war, may authorize and provide for seizure and sequestration, through executive channels, of property believed to be enemy owned, if adequate provision be made for return in case of mistake, and what shall be adequate provision is for Congress to declare.

**2. War** ☞12—**Citizen whose property seized and sold by Alien Property Custodian is limited to recovery of net proceeds.**

Under Trading with the Enemy Act, § 7, as amended by Act Nov. 4, 1918 (Comp. St. Ann. Supp. 1919, § 3115½d), the sole relief of a citizen, whose property was seized and sold by Alien Property Custodian as enemy owned, is limited to net proceeds received by the custodian or by the United States treasurer, and he is not entitled to profits accruing to the United States by reason of investments of proceeds in United States securities as authorized by the act.

**3. War** ☞12—**Alien Property Custodian not trustee ex maleficio subject to account for proceeds of property other than required by statute.**

Under Trading with the Enemy Act, §§ 7e, and 12 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115½d, 3115½ff), the Alien Property Custodian, with respect to the proceeds of property of a citizen seized and sold as enemy owned, though in some respects a trustee, is not a trustee ex maleficio as to the owner subject to account for the proceeds other than as provided by the letter of the statute.

**4. Eminent domain.** ☞2(1) — **War** ☞12 — **Seizure of enemy owned property not condemnation or appropriation for public use.**

The seizure, in time of war, of property believed to be enemy owned, has no resemblance to the condemnation or appropriation of private property for public use.

**5. United States** ☞110—**Not liable to pay interest on debts unless by consent of Congress or lawful contract of executive.**

The United States is not liable to pay interest on its debts unless its consent to do so has been manifested by act of Congress or lawful contract of its executive officers.

Appeal from the District Court of the United States for the Southern District of New York.

Bill in equity by Max Henkels against Thomas W. Miller, as Alien Property Custodian, and another. Decree for plaintiff, and from an order denying a motion to set aside release and satisfaction of decree (298 F. 947), plaintiff appeals. Affirmed.

Henkels brought suit under section 9 of the Trading with the Enemy Act (40 Stat. 419 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½e]), alleging in substance that the Custodian had seized and retained possession of certain shares of stock belonging to him individually and issued by a domestic incorporated company. Henkels was and is a citizen of the United States.

The principal issue resolved at trial was that the stock so seized did belong absolutely to plaintiff Henkels and was not, as contended by the Custodian, property of the enemy copartnership in which Henkels had admittedly a partner's interest. Prior to the filing of the bill, the Custodian had sold the shares of stock so seized and paid over the net proceeds of sale to the Treasurer of the United States. After trial, a decree was entered specifically directing the defendant Treasurer "to account for and pay over to the complainant (Henkels) the proceeds of the sale of the said (stock) now in his possession or custody, together with the income or interest if any earned thereon."

It was agreed between the parties that the United States Treasurer had in his possession, as the net remaining proceeds of the sale of Henkels' stock, the sum of $873,776.28.

The decree above referred to was entered July 6, 1921. During the ensuing six months or thereabouts, efforts were made by Henkels' attorney to recover not only this admitted sum, but the "income or interest earned thereon" by said Treasurer and/or the Custodian.

It is now agreed that the Custodian never received any dividends on the stock prior to sale. Whatever profits or advantages resulted to any one from the stock or its proceeds arose because, in compliance with section 12 of the act (40 Stat. 423 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½ff]), the Secretary of the Treasury had invested most of all the moneys realized from sales of property seized by the Custodian, in the securities of the United States yielding interest. There was never any such investment of the specific sum obtained from the sale of Henkels' stock or any other particular lot of seized property. Nor had the Secretary invested all the money so received by him from the Custodian, because there was kept on hand a cash balance of approximately $5,000,000 at all times to provide for obvious possible contingencies. But from the investment of the major portion of the moneys realized from Custodian's sales there had accrued in the treasury of the United States prior to March 4, 1923, the sum of $27,000,000. (Document No. 10, Senate 68th Congress, 1st Session.)

To some equitable portion of this income, interest, or increment Henkels laid claim under the decree above recited.

The defendants, through the Attorney General of the United States, refused to pay anything but the above-admitted principal, viz., $873,776.28, and Henkels for business reasons, finally executed and delivered a receipt and release in consideration of that sum on which an order satisfying the aforesaid decree of record was entered in the court below January 10, 1922.

On becoming aware of the very great profits accruing to the United States treasury by the investment of funds produced by Custodian's sales, plaintiff moved in the court below to be relieved of the release as above stated by Henkels, and to have the order of satisfaction set aside on the ground that the same had been obtained by duress and to the end that application might be made for a master to ascertain what income or interest had been obtained by defendants or either of them from the use and investment of the fund which contained Henkels' $873,766.28.

This motion the court denied, and from the order of denial this appeal was taken by complainant.

Morris J. Hirsch, of New York City (Herbert R. Limburg and Harry F. Mela, both of New York City, of counsel), for appellant Henkels.

William Hayward, of New York City, and Dean Hill Stanley, and Adna R. Johnson, Jr., Sp. Asst. Attys. Gen., opposed.

Before HOUGH and MANTON, Circuit Judges, and AUGUSTUS N. HAND, District Judge.

HOUGH, Circuit Judge (after stating the facts as above). This bill presents two questions: (1) Can appellant, by his plea of duress, be relieved of the receipt and release executed by him? And (2) if such relief be granted, could he recover any more than he has received in this litigation?

Some other matters have been discussed arising out of an inquiry whether the decree of July, 1921, was final or interlocutory. To this question we shall pay no attention. It is a mere matter of detail, and the vitals of the case are plain enough.

Of the two questions above stated, we prefer to consider the second; for, however interesting the question of duress may be, considering the trend of modern decisions, a judgment here favorable to appellant would leave the second question undetermined, while the second question; if decided adversely to appellant, disposes so far as we are concerned of the whole matter.

Appellant's proposition is that the Custodian became a trustee for Henkels in respect of this stock and its proceeds. It is now adjudicated that there was never any right to seize the stock, wherefore the Custodian must respond, like any other trustee who has made profit out of the fund for which he is held ultimately responsible.

It is undoubtedly true that in a certain sense the Custodian is a trustee. He is called by that name in the twelfth section of the act (40 Stat. 423), and he has called attention to his trusteeship for the public at the bar of this and many other courts.

But if appellant's theory of attack be considered closely, it is clear that the trusteeship that he invokes as against the Custodian is one arising ex maleficio. It is a trusteeship created by a wrong; and that wrong

was a seizure of property belonging to an American citizen and unaffected by enemy ownership.

The niceties of the law of torts have not been and cannot be strictly regarded in statutes passed under the stress of war and designed to meet war conditions.

[1] As the court said in Stoehr v. Wallace, 255 U. S. 239, at page 245, 41 S. Ct. 293, 296 (65 L. Ed. 604): "That Congress in time of war may authorize and provide for the seizure and sequestration through executive channels of property believed to be enemy owned, if adequate provision be made for a return in case of mistake, is not debatable." And what shall be "adequate provision" is for the Congress to declare.

[2] That mistakes would be made under this act was undoubtedly contemplated, and the act itself declared in the amendment of November 4, 1918 (40 Stat. 1020 [Comp. St. Ann. Supp. 1919, § 3115½d]): "That the sole relief and remedy of any person having any claim to any money or other property heretofore or hereafter conveyed * * * to the Alien Property Custodian * * * or seized by him shall be that provided by the terms of this act, and in the event of sale or other disposition of such property * * * shall be limited to and enforced against the net proceeds received therefrom and held by the Alien Property Custodian or by the Treasurer of the United States." This means in substance that persons in the position of Henkels have no remedy except under section 9 of the act, and under that section the amendment just referred to limited recovery to the "net proceeds" received from the property involved.

[3] Again, it is to be observed that appellant's contention and any holding of the Custodian to the liabilities of a trustee ex maleficio is opposed certainly to the spirit, and we think to the letter of subdivision (e) of section 7 of the statute (40 Stat. 418 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½d]), declaring that "no person shall be held liable in any court for or in respect to anything done or omitted in pursuance of any order, rule, or regulation made by the President under the authority of this act." And the actions of the Custodian even when he makes mistakes are and always were pursuant to such presidential rule.

Again, in whatever trusteeship the Custodian functions, the statute (section 12, 40 Stat. 423) confines his office to "property other than money." As to money he is compelled to pay that forthwith into the treasury of the United States, and the Congress in so many words has refused to him in respect of money the position of trustee.

Tested by ordinary legal formulæ, the exact standing of the Custodian is difficult of definition when the various descriptions of his duties, privileges and responsibilities prescribed by statute are considered together. But this much is we think clear: That it can never be said that by reason of conduct such as occurred in this case of Henkels the Custodian became a trustee for Henkels in the same sense that he would have become a trustee under a deed inter partes, or by reason of an actionable wrong.

There is a technical reason why under this decree Henkels can never succeed in holding the Custodian to the position of a trustee: It is that the decree for money and for an accounting for money runs against the Treasurer of the United States only.

But this objection goes deeper than a mere technicality; it is a recognition in and by the decree of the fact that when the Custodian sold Henkels' stock and paid the proceeds into the treasury, he lost control of the money; it became like any other money in the treasury of the United States and there subject to congressional action in respect thereof.

The only reason why the decree could in any way operate against the Treasurer of the United States or the Secretary of the Treasury is section 9 of the statute, the authority of the court below to affect the Treasurer with the decree depended upon that statute alone.

Remembering the admission that no dividends ever accrued upon this stock, the sole question now becomes this: Can the United States be compelled to pay to Henkels whatever gain it has made out of handling Henkels' money while it was in the treasury?

We pay no attention to the difficulty of allocating any special gain to this special fund; let it be supposed that that could be done; the question remains whether, under existing law, the United States is under compulsion to admit Henkels to a share of that property.

Thus the matter becomes the old one of allowing interest against the United States.

It is sought to justify such recovery here by analogy to cases of condemnation of lands or other property for private use. The theory of all such well-considered decisions is that since no American government can take private property for public use without making just compensation—and just compensation includes reasonable interest

for delay in payment of amounts awarded—therefore interest should be allowed. The matter is summarily put by Brandeis, J., in United States v. North American, etc., Co., 253 U. S. 330, at page 334, 40 S. Ct. 518, 64 L. Ed. 935.

[4] But entirely apart from the argument above stated and based upon the language of the statute, there is no resemblance between the war measure of seizing property "believed to be enemy owned" and condemning or otherwise appropriating private property for a public use. We think the difference too obvious to require further discussion.

[5] The general proposition affecting this litigation is accurately stated in the syllabus of United States v. North Carolina, 136 U. S. 211, 10 S. Ct. 920, 34 L. Ed. 336, viz.: That no sovereign is "liable to pay interest on its debts, unless its consent to do so has been manifested by an act of its Legislature, or by a lawful contract of its executive officers." And the matter was again put in most general terms as to all sovereigns in United States v. New York, 160 U. S. 598, at page 619, 16 S. Ct. 402, 40 L. Ed. 551.

So far as citations gain importance by similarity of facts, we remain of opinion, despite strenuous argument contra, that the decision in United States ex rel. Angarica De La Rua v. Bayard, 127 U. S. 251, 8 S. Ct. 1156, 32 L. Ed. 159, presents an almost perfect analogy to the present litigation. There, as here, the United States treasury lawfully received certain moneys, which moneys were lawfully due to one who was apparently a citizen of the United States.

There the reason for withholding was a doubt as to what would be the net proceeds after deduction of expenses. Here the reason for withholding was a doubt as to legal ownership; but in both cases the United States earned money by investing the withheld funds in its own securities. The Supreme Court, by applying the well-known doctrine above cited refused to permit Angarica to collect the profit made by the United States.

The law has not changed, and we would be unable to award to Henkels any portion of the money that the United States has acquired by investing his money.

We must and do hold that under the circumstances now revealed, so much of the decree of July, 1921, as required the Treasurer of the United States to pay anything more than the "net proceeds" which Henkels has already received was unlawful. He never could have gotten anything, even if there

had never been a receipt and release executed.

Consequently the order appealed from is affirmed. No costs.