## BERTELSEN & PETERSEN ENGINEERING CO. v. UNITED STATES.

No. 2668.

Circuit Court of Appeals, First Circuit.

Aug. 2, 1932.

John W. Lowrance, of Boston, Mass. (Joseph Wiggin and Lispenard B. Phister, both of Boston, Mass., on the brief), for appellant.

Henry C. Clark, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (Frederick H. Tarr, U. S. Atty., and J. Duke Smith, Sp. Asst. U. S. Atty., both of Boston, Mass., and C. M. Charest, General Counsel, Bureau of Internal Revenue, and Herbert S. Fessenden, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for the United States.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

MORTON, Circuit Judge.

This is an action to recover $34,555.68 with interest, constituting part of an admitted overpayment by the plaintiff on its income taxes for 1917. The plaintiff's total overpayment for that year amounted to $91,-570.34. For the next year, 1918, the government assessed on the plaintiff an additional tax in the amount now sued for, and collected it by applying a credit from the overpay-

ment of the preceding year. The plaintiff objected to this, on the ground that the additional assessment was barred by the statute of limitations. It was admittedly made after the expiration of the statutory period; but the government contended that the time had been so extended by waivers given by the plaintiff as to include the date, July, 1926, on which the additional assessment was made. The plaintiff denied that the waivers given had that effect. The District Judge resolved this question of fact and law against the plaintiff. An incidental, though not unimportant, question of interest was also involved which the District Judge decided in favor of the government.

The plaintiff's return of its 1918 income tax was filed on June 16, 1919. The five-year period within which additional assessments for that year could be made expired on June 16, 1924. The taxpayer signed four waivers purporting to extend this period. The first waiver was dated January 8, 1924; it said: "This waiver is in effect for one year from the date it is signed by the taxpayer," i. e. it extended the time to January 8, 1925. It covered only the 1918 tax. The second waiver was dated February 23, 1924; it extended the time for "one year after the expiration of the statutory period of limitation, or the statutory period of limitation as extended by any waivers already on file with the Bureau." It covered not only the year 1918, but also the year 1917. By tacking it to the preceding waiver, it carried the time within which an additional assessment for 1918 could be made up to January 8, 1926. The third waiver was dated February 27, 1924; it was "for the years 1918 (1917 extended)." It covered the period "for one year from the date it is signed by the taxpayer," i. e., to February 27, 1925. On the face of the papers it effected nothing; it is obviously inconsistent with the preceding waiver. The fourth and last waiver was dated October 30, 1924. It covered only the year 1918, and extended the time "one year after the expiration of the statutory period of limitation, * × ˟ or the statutory period of limitation as extended by section 277 (b) of the Revenue Act of 1924 (26 USCA § 1057 note) or by any waivers already on file with the Bureau."

By tacking the last waiver to the second waiver, and tacking the second to the first, the time was extended to January, 1927. It will be observed that the first three waivers were given within a period of less than two months in January and February, 1924,—two of them within the space of four days—and that these two were inconsistent, the later being

of no effect if the earlier be taken according to its terms.

In this situation the plaintiff offered to show by extrinsic evidence that the second waiver was sent in order that the year 1917, which was not mentioned in the first waiver, might also be covered; that this second waiver was not on the usual form, and the third waiver was made out on the standard form, and was intended to correct the informality in the second and to be in substitution for it; that the last waiver was given on the assumption that the second had been so displaced. This evidence was excluded by the District Judge, and the petitioner excepted.

We are of opinion that the evidence should have been received. The basic purpose of judicial proceedings is to discover the true facts, and, having done so, to give judgment as is right upon them. Arbitrary rules of law should not be pressed beyond what necessity requires. The parole evidence rule, as applied to contracts, rests on estoppel; i. e., that a party having put his agreement with the other party into writing will not be heard to vary or contradict the written instrument. Central Coal & Coke Co. v. Good (C. C. A.) 120 F. 793, 798, cited with approval in Miller v. Robertson, 266 U. S. 243 at page 255, 45 S. Ct. 73, 69 L. Ed. 265. A waiver—which has been defined as "the intentional relinquishment of a known right" (McGrath v. Quinn, 218 Mass. 29, 105 N. E. 555, 556)—is not a contract (Stange v. United States, 282 U. S. 270, 51 S. Ct. 145, 75 L. Ed. 335), and it is doubtful how far the parole evidence rule applies to such writings. Olmstead v. Mansir, 10 Allen (Mass.) 424. Even as to contracts, the rule has never been so rigidly applied as to prevent showing the real nature of the transaction (Brick v. Brick, 98 U. S. 514, 25 L. Ed. 256; Mobile & Montgomery Ry. v. Jurey, 111 U. S. 584, 591, 4 S. Ct. 566, 28 L. Ed. 527); nor, as between inconsistent instruments, which one the parties intended should be effective. In Payson v. Lamson, 134 Mass. 593, 45 Am. Rep. 348, a mortgage was conditioned on the payment of certain notes with 6 per cent. interest; the notes were drawn without interest. It was held that the plaintiff might show that, by the understanding of the parties, the notes were to carry interest as stated in the mortgage.

In the opinion the court said: "Where two papers are executed at the same time, relating to the same contract or transaction, both may be looked at for the purpose of showing what the actual contract or transac-

tion was. If, on examination, it appears that they are in some respects inconsistent, as, for example, if a contract is executed in duplicate, and the two parts which ought to be alike are found to be different, or if a mortgage does not correspond with the note which it was intended to secure, it is apparent that the inconsistency must have occurred through some mistake or accident. It certainly is not to be supposed that the parties have understandingly intended to execute and deliver, as parts of the same transaction, papers which are inconsistent with themselves; and if it appears that they have done so, it is natural and reasonable to infer that one of the papers was so executed and delivered by mistake. In such case, it not being apparent on the face of the papers which one expresses the real intention and agreement of the parties, there is no good reason why extrinsic evidence should not be received in a court of law to show the fact. Each paper may be put in evidence, as an admission or declaration of whatever is therein contained. An argument may also be drawn from the circumstances of any particular case, that one of the papers would be more likely to express the true meaning of the parties than the other. But there is no legal presumption to that effect. There being, then, two inconsistent writings, both admissible as evidence of the transaction to which both relate, and there being no legal presumption in favor of either, but it being a question of fact which correctly represents the agreement of the parties, we should be slow to admit that a court of law, encountering such a state of facts, would be powerless to deal with it, and unable to consider other evidence to show which paper was delivered understandingly, and which through mistake. On the contrary, we are of opinion that, on the trial of the action at law, it would be entirely competent for the present defendants, on the one hand, to show by extrinsic evidence that the notes expressed the real understanding and agreement of the parties; or for the present plaintiffs, on the other hand, to show in like manner that the mortgage expressed such understanding and agreement."

■ These observations of a very able judge apply with force to the case before us. Part of the period of extension as claimed by the defendant is covered by four separate waivers, all of the same general character, each given by the plaintiff and accepted by the government. There was no apparent reason for such duplication. As has been said, the waiver of February 27 covers no period, if

the government's contention be accepted, which was not already covered by that of February 23. On the face of the papers a probability of mutual mistake appears which, even if they be regarded as contracts, opened the door to extrinsic evidence to prove the real understanding of the parties, as to which of the overlapping inconsistent instruments was relied on. Moreover, it is always open to show by parole evidence that a written agreement, not involving matters required to be in writing, was subsequently abandoned or rescinded by parole. Bradford v. Union Bank, 13 How. 57 at page 66, 14 L. Ed. 49; Thomas v. Barnes, 156 Mass. 581, 31 N. E. 683.

■ As to interest: What has been decided is sufficient to dispose of this appeal. But as questions of interest are likely to arise, in one form or another, on the new trial, they ought to be determined. Interest against the government is only allowable as provided by statute. Angarica v. Bayard, 127 U. S. 251, 260, 8 S. Ct. 1156, 32 L. Ed. 159; Boston Sand & Gravel Co. v. United States, 278 U. S. 41, 49 S. Ct. 52, 73 L. Ed. 170. There is no fixed right to it. It depends on the law at the time when the claim is allowed by the department, or, if the claim is litigated, when the case is heard by the court. Hind v. United States, 41 F.(2d) 892 (Ct. Cl.).

■ The plaintiff contends that, if the additional assessment of $34,555.68 was valid, it should be regarded as having been made under the act of 1926, and the credit should therefore carry interest to the date of the assessment (July, 1926), instead of to the due date of the tax against which it was taken. Revenue Act of 1926 § 1116 (26 USCA § 153 note). For the reasons stated in Riverside Cotton Mills v. United States, 37 F.(2d) 965 (Ct. Cl.), with which we agree, the District Judge correctly ruled that the assessment was made under the act of 1918, and that the government's computation of interest was in this respect right.

■ The plaintiff further contends that it was entitled to interest on the amount actually refunded, not merely to the date of the allowance of the refund (July, 1926), but to the date of payment of it (October, 1927). This payment was made without suit. The Act of 1926, § 1116, in force when the refund was made, contained explicit provisions as to interest on such refunds. It is controlling. The plaintiff's claim in this respect was properly disallowed.

It follows that, if the additional assessment of $34,555.68 was legally made, the rulings of the trial judge on interest were correct. No question is made as to the slight error in dates which he noticed and corrected.

If the additional assessment was not legally made, then as this sum will be recovered by suit in court, interest on it will be governed, not by the act of 1926, nor by any provisions as to interest on credits, but by the current act governing interest on claims against the government collected through judgment of a court, viz., section 319 of the act making appropriations for the legislative branch of the government and for other purposes approved June 30, 1932. We think this act sufficiently broad in its language to include all pending cases.

The judgment of the District Court is vacated, and the case is remanded to that court for further proceedings not inconsistent with this opinion.